Moore *v.* Galupo.

SAMUEL MOORE

*v.*

JOSEPH GALUPO.

[Filed July 18th, 1903.]

An agreement, in writing, for the sale of lands for a total price of $54,000 provided that $250 should be paid on the date of the agreement, $250 on the 3d day of June, and $9,500 on the delivery of the deed on or before the 1st day of the next April; "the remaining sum of $44,000 to be secured by mortgage or mortgages on said premises bearing six per cent. per annum interest." The proposed vendee paid the first two cash installments of the contract price, and refused to go further with the transaction. The proposed vendor filed a bill to compel the specific performance of the agreement.—*Held*, the written contract shows that the parties intended $10,000, part of the contract price, should be paid in cash on or before the delivery of the deed, and that the remaining $44,000 should be secured, upon some unexpressed term of credit, by mortgage or mortgages upon the premises, bearing interest at six per cent. per annum. It does not show that the parties had come to any agreement as to how many mortgages should be given; nor what should be the time or times of payment of the mortgage-money; nor to whom the mortgage or mortgages should be made; nor (if more than one mortgage should be made) whether they should be concurrent or successive liens, or, if successive, in what order of precedence.—*Held, further*, the written .agreement is so uncertain and inconclusive, as to essential incidents of the contract, that no decree for specific performance can be made.

On bill for specific performance of contract. Answer and proofs.

Moore *v.* Galupo.

This bill is filed by the complainant vendor to compel the specific performance by the defendant vendee of an agreement for the purchase of a tract of land lying at the southwest corner of Atlantic and Presbyterian avenues, in Atlantic City.

The bill is based upon a written contract in the words and figures following:

"Articles of Agreement, made this twenty-ninth day of May, in the year of our Lord nineteen hundred and one, between Samuel W. Moore, and C. May Moore, his wife, Enoch H. Moore, and Harry S. Moore, of Atlantic City, N. J. and Joseph Galupo of the same place,

Witnesseth, that the said parties of the first part, for and in consideration of the sum of fifty-four thousand dollars, to be paid and satisfied as hereinafter mentioned, and also in consideration of the covenants and agreements hereinafter mentioned, made and entered into by the said party of the second part, do agree to and with the said party of the second part, that they the said parties of the first part, will well and sufficiently convey to the said party of the second part, his heirs and assigns, by deed of general warranty, free from all encumbrance except as hereinafter stated, on or before the first day of April, A. D. 1902, all that lot, tract or parcel of land and premises hereinafter particularly described, situate, lying and being in the city of Atlantic City, in the County of Atlantic and State of New Jersey:

"Beginning at a point in the Southwest corner of Atlantic and Presbyterian Avenue, and runs thence along Atlantic Avenue in its Southerly line, sixty feet; thence (2) Southerly parallel with Presbyterian Avenue one hundred feet; thence (3) Easterly parallel with Atlantic Avenue sixty feet; thence (4) Northerly along the Westerly line of Presbyterian Avenue one hundred feet to the place of beginning.

"And the said Joseph Galupo, for himself, his heirs, executors and administrators, does covenant, promise and agree to and with the said parties of the first part, their heirs, executors, administrators and assigns, that he the said party of the second part, will pay and satisfy, or cause to be paid and satisfied unto the said parties of the first part, the said sum of fifty-four thousand dollars, as and for the purchase money of the foregoing described land and premises, in the following' manner, that is to say, two hundred and fifty dollars on the date hereof; two hundred and fifty dollars on June third, next; nine thousand and five hundred dollars on delivery of deed to party of second part, on or before the first day of April next, and the remaining sum of forty-four thousand dollars to be secured by mortgage or mortgages on said premises bearing six per cent. per annum interest. Title to the said premises is to be insured by the West Jersey Title and Guaranty Co., the expenses of which is to be paid by party of the second part. Expenses of the said premises are to be adjusted as of the date of settlement.

"And it is further agreed by the parties to these presents, that the said party of the second part, his heirs, and assigns, may enter into and upon the said land and premises on the delivery of deed, and from thence take

the rents, issues and profits to his and their use. And for the performance of all and singular the covenants and agreements aforesaid, the said parties do bind themselves and their respective heirs, executors and administrators, and they hereby agree to pay, upon failure to perform the same, the sum of five hundred dollars, which they hereby fix and settle as liquidated damages therefor.

"In Witness whereof, the said parties have hereunto interchangeably set their hands and seals the day and year first above written.

                                "SAMUEL W. MOORE,    [SEAL.]
                                "C. MAY MOORE.       [SEAL.]
                                "ENOCH H. MOORE,     [SEAL.]
                                "HARRY S. MOORE,     [SEAL.]
                                "JOSEPH GALUPO.      [SEAL.]

"Signed, sealed and delivered in the presence of
                        "H. W. LEWIS."

The bill alleges that upon the making of the agreement, Galupo, the defendant, paid to the complainant $250 as an installment of the contract price, and that on June 3d, 1901, the defendant paid a second installment of $250 on account of that price; that on the 1st day of April, 1902, the complainant presented to the defendant a deed for the premises, invited him to take possession of the land and demanded of him that he should pay the sum of $9,500, adjust the expenses of the premises up to the last-named date and secure the remaining sum of $44,000 by mortgage or mortgages upon the premises agreed to be conveyed, bearing six per cent. per annum interest, which invitations the bill alleges the defendant refused to accept.

The prayer of the bill is that the defendant be decreed specifically to perform his agreement, and to pay to the complainant the said sum of $9,500, with interest from April 1st, 1902, and to secure, by mortgage or mortgages upon the premises, bearing interest at six per cent., the remaining sum of $44,000, and to adjust and settle with the complainant to the last-named date the expenses of the complainant.

The defendant, answering the bill, denies that at the time the contract was made, or since, the complainant was well entitled in fee-simple to the lands described in the bill. He admits the making of the agreement, a copy of which is set forth in the bill, and the payment of the two installments of the contract price; denies the complainant's tender of the deed and invita-

tion to the defendant specifically to perform the contract, averring that by the terms of the contract the complainant agreed to convey the premises clear of all encumbrances except as stated in the agreement, and that at the time of the alleged tender of the deed, the premises had been encumbered by an additional mortgage for $30,000, placed thereon without the knowledge or consent of the defendant.

The answer of the defendant expressly avers that the agreement is so indefinite and uncertain in its prescription of the manner in which the defendant should pay and satisfy the purchase-price of the land as to be entirely incapable of performance. The answer recites that clause of the agreement which provides that $44,000 of the purchase-price should "be secured by mortgage or mortgages on the premises, bearing six per cent. per annum interest," and insists that the agreement "wholly fails to provide for how long such mortgage or mortgages are to be drawn, what are to be the terms and conditions thereof, or when and how payable," or in fact anything to disclose with certainty what is required to be done on the part of the defendant, to constitute a compliance with the terms of said agreement. The defendant prays that he may have the same benefit as if he had demurred to the complainant's bill.

At the hearing the bill was amended by inserting an allegation that on March 20th, 1901, the defendant informed the complainant that he would not carry out the agreement at the time named, giving as his reason for the refusal that he had not the money to do so.

The defendant amended his answer denying this allegation. The cause came to hearing on these pleadings.

*Mr. Ulysses G. Styron, Mr. William I. Garrison* and *Mr. Joseph H. Gaskill,* for the complainants.

*Mr. Charles C. Babcock* and *Mr. Clarence L. Cole,* for the defendant.

Grey, V. C.

The argument of this cause presents but two points. The first is whether the placing of the $30,000 mortgage upon the prem-

ises by the complainant, the proposed vendor, after the agreement for sale had been made, but before the time had come for its performance, should deprive the complainant of the right to a decree for specific performance, in view of the fact that the agreement calls for a conveyance of a title free from all encumbrance, except as stated in the agreement.

The practice in cases seeking specific performance seems to have established the rule that it is sufficient if the party contracting to sell, has a good title at the time the decree is to be carried into effect, the direction being to ascertain whether the vendor can make a title under the decree, not whether he could make a title at the time of executing the agreement. *Langford* v. *Pitt, 2 P. Wms. 630;* affirmed on appeal. In that case the decree directed a master to inquire whether the plaintiff (vendor) can make a title, and, if he can, the purchase-money to be paid by defendants. The same course of procedure was observed in *Braybroke* v. *Inskip, 8 Ves. *417,* in which the litigation turned upon exceptions taken to the master's report upon such a reference. In *Coffin* v. *Cooper, 14 Ves. *205,* this method was recognized. It was claimed by the party resisting performance, that the rule was that if the vendor could not make title at the date of the master's report the purchaser had a right to be discharged. Lord Eldon declared there was no such rule, saying if it appeared that the vendor upon getting in a term or procuring an administration would have a title, the court would put him upon terms to do speedily the thing required to perfect the title. This practice has received the approval of the court of appeals of this state in *Oakey* v. *Cook, 14 Stew. Eq. 350,* where it declared that the existence of mortgages on the vendor's property was not a violation of the covenant to convey a good title, so as to deprive him of the right to specific performance. That he was only required to remove the encumbrances when the deeds should be delivered.

The whole case shows that the defendant's refusal to perform was in no degree based upon the existence of the mortgage lien placed upon the premises by the complainants. If those mortgages were presently tendered to the defendant canceled, his hostility to performance upon other grounds would remain, and

from every indication in the cause, would be just as strenuously maintained.

It is therefore of no significance that when a deed was tendered the defendant, this mortgage was a lien on the title. He was invited to perform the contract. If he had told the complainant that he was willing to accept the deed upon the cancellation of the mortgage, and the complainant had refused to obtain it to be canceled, the circumstances would have presented a different aspect. It clearly appears that the defendant was at all events determined not to perform the contract, and that he made known this determination to the complainant. Under such circumstances there was no need of formal tender of a deed. *Maxwell, Administrator of Pittenger,* v. *Pittenger, 2 Gr. Ch. 165; Oakey* v. *Cook, 14 Stew. Eq. 363 (Court of Appeals).*

The second contention of the defendant, resisting specific performance of this contract, is that the agreement itself is so uncertain and indefinite in its terms that this court cannot be assured of what the parties intended and agreed to do, and is therefore unable to make a decree for specific performance.

This objection is based on the clause which declares the manner in which payment of the purchase-price shall be made. The agreement is dated May 29th, 1901. By it the whole purchase-money is declared to be $54,000, which, it is provided, shall be paid by the defendant in the following manner: $250 on the day of the date of the agreement—May 29th, 1901; $250 on June 3d (then) next; $9,500 on the delivery of the deed to the defendant, on or before April 1st (then) next; and "the remaining sum of $44,000 to be secured by mortgage or mortgages on said premises bearing six per cent. per annum interest."

The defendant insists that this contract is lacking in certainty and definiteness in respect to the terms of the purchase-price, which is one of the essential features of the contract; that the terms of the contract make it plainly manifest that the parties intended only part of the purchase-money to be paid in cash, and do not show in what mode the residue should be paid.

In the case of *McKibbin* v. *Brown, 1 McCart. 17,* Chancellor Green said that no specific performance of a contract can be decreed in equity unless it be actually concluded and be certain in

all its parts.  If the matter still rests in treaty, or if the agreement in any particular be uncertain or undefined, equity will not interfere.  The learned chancellor declared that this doctrine is uniformly recognized in all the cases, English and American.  On appeal to the court of errors and appeals the decree of the chancellor in that case was affirmed.  *S. C., 2 McCart. 498.* In *Brown* v. *Brown, 6 Stew. Eq. 651,* the court of appeals declared that specific performance would not be decreed unless the existence and terms of the contract be clearly proved.  If it be reasonably doubtful whether the alleged contract was finally closed equity will not interfere.

The principle stated appears to be elementary.  No decisions question it.  The cases submitted to judicial determination present only questions whether the particular agreement sought to be enforced is in its terms so definite and conclusive that the rule does not apply.  An examination of the decisions in this state which have applied or distinguished the application of the rule, will aid in the solution of the present dispute.  In the *McKibbin Case* the contract in terms declared that the complainant should have the privilege of re-leasing the premises for a named sum, "and that the times or credits to be given by the defendant (the lessor) to the complainant (the lessee) should be the subject of arrangement between the parties."  Chancellor Green held that the credits to be given were of the essence of the contract; that this term was not certain or defined by the agreement, and that this court had no power to decree that the defendant should release the property for such credits of payment as this court should deem reasonable and just; that in such case this court would both make the contract and compel its performance, and he refused to aid the complainant, because of the uncertainty as to this phase of the transaction.  His ruling was affirmed on appeal.  In that case the contract by actual expression declared that credits were to be given, and that they were to be the subject of future negotiations between the parties.  But the rule under discussion is not limited to contracts which in express terms declare that credit to be given shall be settled by further bargaining.  It has been applied in all cases where by either expression or fair inference from the words used it ap-

pears the parties have not settled the question of credit given by fixing upon a definite time for payment.

In *Potts* v. *Whitehead, 5 C. E. Gr. 55*, the alleged contract was a written agreement that the complainant should for thirty days have the refusal of certain lands, which the defendant agreed to convey to him for $20 per acre. The terms to be $500 on execution of the deed and the balance on mortgage upon the land, with interest at six per cent. The complainant claimed that he had sent the defendant a letter (copy of which was produced) saying he had twice attempted the tender of the first payment upon the agreement made between them, and would meet the defendant (at named hours and places) "when I shall be ready to make tender of the money and execute the proper agreement thereupon." Chancellor Zabriskie held (at *p. 58*) that if this referred to executing an agreement yet necessary to be made as to the time of payment of the bond and mortgage for the balance of the purchase-money, it showed that an important part of the essence of the agreement—the time for payment of that balance—was not yet agreed upon; that although this question, arising from the want of designation of any time when the great bulk of the consideration was to be paid, was not raised on the argument, it was too prominent to be passed without notice; that the situation left a substantial and material part of the contract yet open for negotiation; that it was a settled principle that equity will not enforce a contract, any material part of which has to be settled by negotiations between the parties. On appeal this judgment was affirmed by the court of appeals without, however, expressing any opinion on this point. *S. C., 8 C. E. Gr. 515.*

In the case of *Nichols* v. *Williams, 7 C. E. Gr. 63*, the alleged contract was in writing, and the complainant thereby agreed with the defendant to convey certain lands for the price of $150,-000. The defendant agreeing to pay that sum by conveying certain specified tracts of land, valued at $90,500, and "by executing two mortgages upon the property conveyed to him, one for $50,000 and one for $9,500." It was not stated when these mortgages were to be payable, or whether with or without interest, or at what rate of interest, nor to whom they were to be

made.   Chancellor Zabriskie held that it was evident that some time was to be given for the payment of the mortgages; that it was a material incident of the contract, left to be ascertained by subsequent negotiations; that a mortgage for $50,000, payable on demand, or one day after date, or a mortgage conditioned to pay that sum ten years after date would each comply with the terms of the credit stated in the bill, and he sustained a demurrer to the bill which sought to enforce the contract.   In each of the last two cases the lack of certainty in the alleged contract in fixing the time when a credit to be given should terminate by payment of the purchase-price, was held to be fatal to the claim for its enforcement by specific performance.

In *Green* v. *Richards, 8 C. E. Gr. 32,* the agreement was to sell a house and lot for $2,500, and "when there is $500 paid, and the back rent, I will give the deed and take a mortgage for $2,000."   Chancellor Zabriskie recognized the force of the general rule that when credit is to be given and the contract omits to fix a time of payment, the contract is too uncertain to be specifically enforced.   He differentiated this case from the preceding cases of *McKibbin* v. *Brown, Potts* v. *Whitehead* and *Nichols* v. *Williams, ubi supra,* declaring that in those cases it appeared to be the intention of the parties that the time of payment should be postponed; that in the case before him there was no agreement that the purchaser should have any credit; that in such case the mortgage should be made payable on demand.

Counsel for the complainant contends that the rule refusing specific performance where the contract gives a credit without fixing a definite time for payment, is only applicable to agreements which contain a clause expressly declaring that the terms of the credit to be given shall be the subject of future dealings between the parties, as in the *McKibbin Case.*   He claims that in all other cases this court should follow the declaration of Chancellor Zabriskie, in *Green* v. *Richards, 8 C. E. Gr. 35,* and prevent the defeat of a fair contract by a technical objection, by presuming that it was the intention of the parties to give no credit.   In that case the learned chancellor considered the effect of the words of the contract before him, and declared that there was no agreement for time, and that the purchaser

was not entitled to credit.    Having thus ascertained that the agreement, as framed by the parties, gave no credit, there was no occasion for any presumption ascribing to them an intention not to give credit.    The learned chancellor had himself decided that to be the legal effect of the face of the contract.    This *dictum* of Chancellor Zabriskie does not seem to accord with the view expressed by the court of appeals in affirming *Green* v. *Richards, 8 C. E. Gr. 540,* where, on the point in question, that court declared that "where nothing is said about the credit to be given, and *there are no circumstances from which an infer-ence can be made that it was the intention of the parties that the time of payment should be postponed,* the money is payable immediately."

Here is a clear declaration, by the unanimous voice of the court of appeals, upon a point directly in issue, that the cir-cumstances of each case are to be considered to ascertain (if necessary, by inference) whether it was the intention of the parties that the time of payment should be postponed.

In the case now under consideration, the clause in the con-tract which deals with the purchase-money is divided into differ-ent portions.    It is, I think, quite evident that the parties had in mind one thing to be done with reference to the several install-ments (amounting to $10,000) that came due prior to or on the day of the delivering the deed, which were *to be paid;* and quite another thing regarding the residue ($44,000), which was *"to be secured* by mortgage or mortgages."    The portion of the purchase-money which it was provided should be paid was ob-viously intended to be paid in cash; the residue was just as obviously not intended to be paid in cash, but to be secured by mortgage for some unsettled, unagreed term of credit.    This view is supported by the provision that the mortgage or mort-gages should bear six per cent. per annum interest.    If it had been intended that the mortgage or mortgages should be in-stantly payable, why provide that they should bear interest?    A mortgage instantly payable would draw interest by operation of law, but a mortgage payable at a future time would draw interest only from the time the money came to be due, unless express provision therefor be made in the mortgage.    The insertion of

such an interest clause supports the inference that a credit was intended, and that this provision was necessary to entitle the complainant to interest on that part of the purchase-money which was to be secured by mortgage.

This inference is also supported by the fact that if it was intended that all the purchase-money should be instantly payable on the delivery of the deed, there was no occasion for any provision for a mortgage. In such case there would have been no "remaining sum to be secured."

But the omissions of the complainants' contract to fix a time of payment is not the only element of uncertainty which prevents its specific performance. That contract provides that the sum of $44,000 should be secured by a mortgage or mortgages. This phrasing leaves it uncertain whether one mortgage should be made, or what number of mortgages more than one. It does not prescribe whether, if more than one mortgage should be given, they were to be concurrent or successive liens, nor whether or not they should precede all other mortgages, nor what should be their precedence between themselves.

It is plainly to be seen that these omitted matters were intended to be arranged between the parties when the mortgage or mortgages were to be given.

These elements of uncertainty affect incidents of the contract which are of the essence of its obligation. This appears at once that it is attempted to formulate a decree for its specific performance. Counsel for complainant, in his argument, proffers himself ready to accept a decree

"made in the terms of the agreement for a mortgage at the rate of interest provided, and for the sum stipulated, without saying on the face of the mortgage whether it is on demand, or for a year, or for any other stated period," &c.

Counsel for the defendant at once replies that this proposition assumes that there is no difference between an agreement to pay money at a named time, and an agreement to secure it by mortgage. For such a mortgage as the complainant propose would, in legal effect, be payable at once, precisely as were the cash installments of the purchase-price, thus making the agreement

an undertaking by the defendant to pay at once the whole pur-chase-price—$54,000—which the terms of their contract show was not intended by the parties.

It may, I think, be well asked why, as the contract was to secure the remaining $44,000 by a mortgage *or mortgages,* the defendant should be obliged to give a single mortgage for the whole of the residue? The contract, in express terms, declares that the remaining purchase-money shall be secured by one or more mortgages, but it fails to reserve to either party the right to decide which it shall be—one mortgage or two, ten or forty-four. Both parties must come to one mind as to this incident before the contract can be enforced. As they have not done so, it is apparent that the court cannot settle this incident by its decree for specific performance. To do this would impose upon one party or the other the acceptance of a term which was not finally agreed upon in their dealings and not expressed in their agreement. In short, the complainant asks the court both to make a contract and decree its enforcement.

The agreement is, in the essential particulars named, so uncertain and inconclusive that no decree for its specific performance can be made.

This determination has been arrived at irrespective of the verbal testimony which was admitted as to the meaning of the parties in using the phrase in the contract "the remaining sum of $44,000 to be secured by mortgage or mortgages on said premises bearing six per cent. per annum interest." That testimony was admitted over objection on the ground that the phrase used in the written contract was a latent ambiguity, such as might be explained by parol proof. The explanations given in the testimony of the complainant Moore, if they are to be considered, do not aid the complainants' cause as to the certainty of the agreement, for he declares that the defendant, the other party to the written contract, knew that he was to give a mortgage, not for $44,000, as stated in the written contract which they signed, but for some uncertain sum, to be afterwards ascertained, being such portion of the $44,000 as the complainant might be unable to place on the premises on first mortgage. In one place he testified that the mortgages were to run for as short a

Moore *v.* Galupo.

period as he could get them; in another, that the second mortgage to be taken from the defendant was to run for one year. In one place he says this was not put in the agreement because he did not know how much the second mortgage would be. In another place he says he does not know why it was not put there. The written contract shows no such agreement.

The defendant, in his parol testimony, testifies that the complainant, when they were discussing the time at which the balance of the purchase-price over the $10,000 should be paid, said, "We will let this stay open—we will agree upon it later, on that question—so that the contract was made without time being mentioned whatever;" that no time was fixed; that the complainant said, "Might give a first mortgage, and might have to take a second mortgage."

The certainty of those terms of the agreement which are here in question, is in no way established by the oral proofs.

I have much doubt whether the written contract shows, in the clause under consideration, such an ambiguity in its meaning that parol proof ought to have been admitted. The testimony offered does not explain or make clear the supposed ambiguous phrase, but goes to show that, upon that particular term of the contract, the parties never did come to a final understanding, and left it open for subsequent conference and adjustment.

Whether the parol proof be considered or ignored, the whole effect of the testimony goes to show that the parties have not concluded their agreement regarding either the number of the mortgage or mortgages to be given for the $44,000 residue of the purchase-money, or the time when it or they were to be payable, or the party to whom they were to be made, or, indeed, upon any of the several other matters above discussed which would have to be determined definitely before the specific performance of the agreement could be decreed. The complainants must seek their remedy at law.

I will advise a decree that the complainants' bill be dismissed, with costs.