JOHN ORIGER, Appellee, v. A. E. KUYPER et al., Appellants.

**SPECIFIC PERFORMANCE:** Evidence—Sufficiency. Uncertainty respecting the terms of the contract sought to be specifically enforced, plus an element of inequitableness in the contract as alleged, demands the refusal of the relief sought.

*Appeal from Palo Alto District Court.*—N. J. LEE, Judge.

JUNE 27, 1918.

SUIT for specific performance of an oral contract to execute a note and mortgage. Decree for plaintiff as prayed. Defendant appeals.—*Reversed*.

*Van Oosterhout & Kolyn,* and *Davidson & Burt,* for appellants.

*Sullivan & McMahon,* and *E. A. & W. H. Morling,* for appellee.

STEVENS, J.—The decree of the court below granted the prayer of plaintiff's petition for the specific performance of

an alleged oral contract between the plaintiff and A. A. Kuyper, by the terms of which, it is claimed, the latter agreed to execute a note for $5,123.50 and secure the payment thereof by a mortgage upon a certain tract of land in Minnesota and to assume and pay all of the outstanding indebtedness of A. E. Kuyper & Company and the West Bend Auto Company.

From the evidence, we gather that A. E. Kuyper & Company was a copartnership, organized in 1907, for the purpose of conducting an implement business at West Bend, Iowa; that the West Bend Auto Company was also a copartnership, organized shortly after the above-mentioned firm went out of business. A. E. Kuyper and plaintiff were members of both firms, and evidence was offered to sustain plaintiff's claim that A. A. Kuyper was also a partner in the business of A. E. Kuyper & Company.

In September, 1914, A. E. Kuyper traded the stock of A. E. Kuyper & Company, together with some real estate belonging to his wife and himself personally, for a half section of Minnesota land. It is conceded that plaintiff invested $4,500 in the firm of A. E. Kuyper & Company, and that he received little, if any, of the profits from said business. The exchange of the stock for the Minnesota land was made without the knowledge of plaintiff; but he later fully consented thereto, and ratified the transaction. Later, A. E. Kuyper and wife executed their joint note to plaintiff for $4,500, for the purpose of reimbursing him for the amount invested in the partnership. A. E. Kuyper and plaintiff also executed a joint note in the sum of $1,200 to one of the creditors of the company.

A. A. Kuyper, who is the father of A. E. Kuyper, advanced considerable sums of money for the payment of the creditors of the company; and, in November, 1914, A. E. Kuyper and wife conveyed the Minnesota land to him. There is no doubt that A. A. Kuyper knew that plaintiff had

an interest in the stock which was traded for the Minnesota land, and that he orally promised to see that plaintiff should be reimbursed for the amount invested by him. Some time after the $4,500 note fell due, A. A. Kuyper and plaintiff entered upon negotiations for the settlement thereof. The former sought to induce plaintiff to accept a conveyance of a portion of the Minnesota land at $100 per acre, and to allow him, on the consideration, the full amount of this note and also the $1,200 note. Failing in these negotiations, the parties met at West Bend, on December 8, 1915, at a bank, where it is claimed that the alleged oral contract was entered into between the parties. The negotiations were conducted in a private room in the bank, during which time plaintiff and his attorney and the defendants A. A. and A. E. Kuyper were present.

It is claimed by plaintiff that, after some negotiations, A. A. Kuyper agreed to pay the full amount of the $4,500 and $1,200 notes, less a discount of $1,000, and to execute his note therefor, secured by a mortgage on the Minnesota land, as stated above, and to assume and agree to pay all of the indebtedness of A. E. Kuyper & Company; that it was agreed that plaintiff's attorney should later prepare and forward the necessary papers to A. A. Kuyper for execution. A note and mortgage, together with a separate agreement covering the indebtedness of A. E. Kuyper & Company, were prepared and forwarded by plaintiff's attorney to A. A. Kuyper, who declined to sign the same.

It is practically conceded by A. A. Kuyper that he orally agreed, upon the above occasion, to execute a mortgage, as claimed, and to pay the indebtedness of A. E. Kuyper & Company; but he denies that he understood he was to pay the indebtedness of the West Bend Auto Company, or that he agreed to do so. In view of the conclusion reached upon the facts, we will not consider appellant's contention that

the contract alleged is void, under the statute of frauds, and without consideration.

That courts exercise a large discretion in granting the specific performance of contracts, and that, where there is doubt or uncertainty respecting their terms, the relief will be denied, is familiar doctrine (*Hopwood v. McCausland,* 120 Iowa 218; *Bradford v. Smith,* 123 Iowa 41; *Quarton v. American Law Book Co.,* 143 Iowa 517); and likewise, it is often denied when to grant it would be inequitable (*New York Brok. Co. v. Wharton,* 143 Iowa 61; *Webber v. Harter,* 154 Iowa 317; *Ormsby v. Graham,* 123 Iowa 202; *Hopwood v. McCausland,* supra).

While the indebtedness of the West Bend Auto Company was admittedly discussed at the December conference, it is not shown by the evidence that appellant knew that its obligations exceeded the amount mentioned by approximately $3,000. The fair inference from what occurred on that occasion is that he did not know that the indebtedness was so greatly in excess of the amount indicated by A. E. Kuyper. The plaintiff apparently knew little about the financial condition of either company, and A. E. Kuyper appears not to have been inclined, if he knew, to fairly represent the facts to plaintiff or to appellant. Appellant denies specifically that he agreed to pay the debts of the Auto Company, or that he understood he was doing so. Plaintiff's attorney, upon his return home, prepared a note and mortgage, together with an agreement to assume and pay the debts of A. E. Kuyper & Company, and forwarded the same by mail to appellant for execution. The agreement made no direct reference to the indebtedness of the West Bend Auto Company, nor was that concern mentioned therein. It is claimed, however, in explanation of this omission, that all parties understood that the West Bend Auto Company was really the same concern as A. E. Kuyper & Company, and that the

partners were the same, except that Tony Andert had acquired an interest in the Auto Company.

We need not determine whether appellant was a partner in the business of A. E. Kuyper & Company, but the evidence offered upon the trial below was insufficient to prove that he was a partner in the Auto Company. No good reason is offered why appellant should, therefore, without some possible benefit to himself, have assumed and agreed to pay the indebtedness of the West Bend Auto Company. Indebtedness of this concern, amounting to about $1,100, was mentioned at the meeting at the bank; but it appeared upon the trial that it in fact exceeded $4,000. While plaintiff testified that appellant was a partner in the business, it appears that, subsequent to the 8th of December, 1915, he brought a suit in equity against the partners of the West Bend Auto Company for an accounting, in which he made no reference in the petition to appellant, but gave the names of the partners thereof as A. E. Kuyper, Tony Andert, and himself. Appellant and A. E. Kuyper both testified that the former had no interest in the business of the West Bend Auto Company. The same firm of attorneys which represented plaintiff at the time the alleged oral agreement was entered into, brought the above suit. It is claimed, however, that the attorney who was present at West Bend did not personally prepare the petition; but plaintiff testified that he had a full conference with the attorney who prepared it, before it was filed.

The West Bend Auto Company was organized for the purpose of selling automobiles, after the implement stock was traded for the Minnesota land. Several agencies were taken over, and a new business was started under the above name and style. The proof leaves the terms of the alleged oral contract in doubt. We are not convinced by the evidence that appellant agreed to assume and pay the indebtedness of the West Bend Auto Company, but we are con-

vinced that to enforce the contract would be unjust and inequitable. That appellant should in some way account to plaintiff for his interest in the Minnesota real estate conveyed to him by A. E. Kuyper, in exchange for the stock of implements owned by A. E. Kuyper & Company, may be conceded; but that is a matter for the future consideration of the parties interested. The conclusion herein reached shall not be construed as in any way prejudicial to the right of plaintiff to pursue any remedy, legal or equitable, to which he may otherwise have been, or may be, entitled. Plaintiff parted with nothing on account of the alleged contract, and may yet pursue any remedy available to him at the time he claims same was entered into. It is our conclusion that the decree of the court below must be, and is, reversed, and the costs will be taxed to the plaintiff.—*Reversed.*

Preston, C. J., Weaver and Gaynor JJ., concur.