IDA FENTON, Appellant, v. LAURA CLIFTON, Appellee (and two other cases).

**SPECIFIC PERFORMANCE:** Contracts Enforcible—Uncertainty in **Terms.** Specific performance cannot be decreed of a contract which is uncertain in its terms.

Headnote 1: 36 Cyc. p. 588.

Headnote 1: 2 L. R. A. (N. S.) 221; 31 L. R. A. (N. S.) 497; 22 A. L. R. 1055; 37 A. L. R. 365; 25 R. C. L. 218.

*Appeal from Hamilton District Court.*—SHERWOOD A. CLOCK, Judge.

NOVEMBER 22, 1927.

Three separate actions in equity, involving identical issues, for the specific performance of an alleged oral contract for an accounting and other equitable relief, were consolidated for trial in the court below and for submission on this appeal. The petitions were all dismissed, and the plaintiff appeals.— *Affirmed.*

*F. J. Lund* and *John Henneberry*, for appellant.

*Henderson & Jones*, for appellees.

STEVENS, J.—The appellant, Ida Fenton, is the daughter of William Tatham, who died testate in Webster County, December 18, 1898, seized of a large estate, and survived by his widow, to whom he gave a life estate in all of his property, and by several children, to whom, except appellant, he devised the remainder in equal shares. The will recited that the testator had given appellant advancements amounting to $1,100, and that he desired that she receive nothing further from his estate. The will was duly admitted to probate, and the mother and two of her sons were designated by the will, and appointed executors. The estate was preserved intact, looked after and managed principally by John Tatham, one of the executors, until the decease of the life tenant, in June, 1921. Appellant is the eldest of the children, was married at the age of twenty, and for the greater part of her married life resided outside of Iowa. In 1899, she returned to Webster County, and commenced an action for a divorce. She alleges in her petition that she then contemplated contesting her father's will; that she employed counsel for that purpose; but that she was dissuaded from taking any further steps in the matter by the promise of her mother that she would procure an agreement by her brothers and sisters to give her a share in the remainder of the estate. The several actions commenced by her were for the purpose of compelling the specific performance of an oral agreement which she alleges appellees entered into with her mother for appellant's benefit, and for an accounting.

After the death of the life tenant, one brother gave appellant $1,500, and two sisters and one brother, $1,000 each; but appellees have contributed nothing out of their shares of the estate to her. Appellant never, at any time prior to her mother's death, talked with any of her brothers and sisters about the matter. She testified that she refrained from talking with them at the request of her mother. It is elementary that specific performance will not be decreed where there is uncertainty, ambiguity, or doubt respecting the contract. *Harper v. Sexton*, 22 Iowa 442; *McDaniels v. Whitney*, 38 Iowa 60; *Batie v. Allison*, 77 Iowa 313; *Gould v. Gunn*, 161 Iowa 155; *Origer v. Kuyper*,

183 Iowa 1395; *Mitchell v. Mutch*, 180 Iowa 1281; *Cohen Bros. Iron & Metal Co. v. Shackelford Brick Co.*, 197 Iowa 674.

While other defenses were pleaded, it is necessary to consider the evidence relied upon to establish the alleged oral agreement only. Appellant testified that she was repeatedly informed by her mother that appellees and the other children had promised to give her something out of their share of the estate. No other evidence of the agreement was introduced. The appellees Edna E. Paine and Sheldon Tatham both denied that they ever at any time had any conversation with their mother about the matter, or that they promised or agreed to give her something out of their portions of the father's estate. They had, however, heard of their mother's wishes in the matter. This testimony is contradicted only by that of appellant as to what her mother told her. The appellee Laura Clifton admitted that she had many conversations with her mother about it; that her mother requested that each of the children do something for appellant when they came into possession of the estate; and that she told her they would do so. Sometime after the mother's death, one of the executors called a meeting of the brothers and sisters, except appellant, at which the question of making a contribution to appellant was talked over among them. John Tatham, one of the executors, and a witness for appellant, testified that all of the participants in the conference expressed a willingness to give appellant something, but that no definite agreement was reached as to the amount, and each was left to follow his or her own inclination in the matter.

Two letters, one written by Mrs. Clifton and one by Mrs. Paine to appellant, were introduced in evidence. These letters were written in response to communications received from appellant, who was then residing in Chicago. Mrs. Clifton, in the letter written by her, refers to the conversations with her mother, but does not admit the alleged oral agreement. The same is true of the letter of Mrs. Paine. Both sisters, however, in language wholly vague as to amount, said that they were going to send her some money. Appellant claims that she was informed by her mother that they each agreed to pay her at least $1,000. This is the amount demanded by the petition.

It will serve no good purpose to review the evidence in detail. The most that can be claimed by appellant therefrom is

that her mother induced her not to contest her father's will; that she promised to secure an arrangement or agreement with the children to give her something out of the estate; and that all of them, except Mrs. Paine and Sheldon, at some time or other expressed the intention of sharing something with her. The evidence wholly fails to sustain the alleged oral agreement. It is impossible to determine therefrom what amount, if any, appellees agreed to pay. On this point the evidence is wholly vague, if not entirely wanting. A court of equity will not undertake to make a contract for the parties, nor can it enforce one the terms of which are in doubt. There is no way by which the court can determine the amount for which judgment should be entered. At least, Mrs. Clifton is under strong moral compulsion to carry out the promises made to her mother. The remaining appellees have, on occasions, expressed a willingness to aid appellant, and it may be assumed that they will do so.

If it be assumed, without being decided, that a contract supported by a good consideration was entered into between the mother, appellees, and their brothers and sisters, for the use and benefit of appellant, the evidence is too uncertain, indefinite, and ambiguous as to its terms to permit a decree for the specific performance thereof, or relief in any other form. For these reasons, the judgment of the court below must be, and is, affirmed.—*Affirmed*.

EVANS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.