GENEVIEVE LEWIS JOHNSTONE, Appellant, v. EDWARD KNOX JOHNSTONE, Appellee.

No. 44694.

504

March 7, 1939.

J. O. Boyd and Hollingsworth & Hollingsworth, for appellant.

E. W. McManus and Ralph B. Smith, for appellee.

MITCHELL, C. J.—Genevieve Lewis Johnstone Ebersole commenced this action in equity against Edward Knox Johnstone, the petition being in two counts, the first praying that the defendant be cited for contempt, and the second count seeking specific performance of a contract made during the pendency of divorce proceedings, and for judgment in the amount of unpaid installments for support and education of the children, and for costs, including attorney's fees.

There was an answer filed, pleading that the minor son, Lewis Knox Johnstone, had been sent to Dartmouth College without the defendant's consent, and that he had notified the plaintiff he would not pay the expense of said son in excess of $100 per month. A tender was also pleaded, stating that he had strictly complied with all of the provisions of the divorce decree and contract. Defendant also filed a cross-petition, claiming that his financial condition had been impaired, asking for a reduction in the amount that he was required to pay under the divorce decree, and for absolute custody of the children. There was a reply filed to this, denying mainly the allegations of the cross-petition. There was a hearing, at which a great deal of evidence was offered, and the lower court entered an order and judgment, allowing the plaintiff to recover for the maintenance of the minor daughter from September 1937 to

June 1938, inclusive, in the amount of $1,000, and for moneys advanced for the minor son for his education in the amount of $1,393.50, which the court held was in full satisfaction of the defendant's obligation to July 1, 1938. The court further held that no change should be made with reference to the custody of the children or in regard to the amount of payments required of defendant under the provisions of the decree relating to the support and education of the two minor children. The court found that the provisions of the contract became a part of the divorce decree, but refused to punish the defendant for contempt and granted no relief by way of ordering specific performance of said contract, and refused to allow attorney's fees.

Since the commencement of the original divorce action the plaintiff has remarried and is now Genevieve Lewis Johnstone Ebersole.

From the finding of the court the plaintiff has appealed, and there is also a cross-appeal on the part of the defendant.

I. We will first consider the appeal of the plaintiff.

Genevieve Lewis Johnstone and Edward Knox Johnstone were husband and wife, and to this union were born two children—Lewis Knox Johnstone, born on March 28, 1919, and Emelie Brooks Johnstone, born August 27, 1921.

In July of 1931 Genevieve Lewis Johnstone filed an action for divorce from Edward Knox Johnstone, in which she asked for temporary alimony, suit money, and maintenance in the sum of $25,000, and permanent alimony in the sum of $200,000; and that she be awarded the home that was then occupied by the parties. There was an answer filed, but before the case was tried the parties entered into a contract whereby, in the event that a divorce was granted, the husband agreed to pay in full of all claims that the wife had against him, the sum of $25,000. Copy of the contract, marked Exhibit A, was attached to the petition in this case. On or about the 3d day of October, 1931, a decree of divorce was entered by the court, and the contract covering the property settlement and the custody of the children was approved. The decree provided, among other things, that the custody of the children was to be equally divided between the first party and the second party; further, in addition to the lump sum of alimony, the father was to pay ''on the first day of each and every month, beginning January 1, 1932, and so long as the first party remained unmarried (first

party being the wife), the sum of Two Hundred Dollars per month to assist in supporting said children and keeping a suitable home for them." There were other provisions in the contract in regard to the support of the children. There was also contained in said contact the following provision:

"During any year that either child is so away at boarding school or college, the Second Party shall wholly support, maintain and clothe such child and pay all expenses of schooling. The Second Party further agrees to pay the reasonable charges for the tuition or school expense of said children, such as music lessons or other similar instruction, provided that before incurring such expense, First Party shall inform Second Party of the nature of the proposed instruction and the probable cost thereof."

The dispute in this case has arisen over the construction of the above-quoted paragraph from the contract entered into and which merged in the decree of divorce. We do not find it necessary, neither do we think that any good could be accomplished by reviewing the difficulties that arose between these people during their married life and shortly thereafter. The evidence is in sharp conflict. No question is raised by either party in regard to the divorce or the entering into of the contract. It is simply an interpretation of what that contract means, especially that provision covering the college education of the children, with which we are confronted.

At the time the divorce decree was entered, the appellee was a man of extensive wealth, which we believe the record fairly shows was in the neighborhood of $500,000. From that time until the trial of this case, appellee has suffered severe financial reverses. It was during those years known as the "depression" years, when values of property shrunk to a small fraction of what they had previously been. The holdings of appellee consisted of a large amount of real estate, bank stock, mortgages, bonds and stocks in various corporations. His income, according to the returns he made, dropped from more than $30,000 a year to around $8,000, and, in order to carry on his various business transactions it was necessary for him to borrow large sums of money. That he met the obligations of the contract until September of 1937 is not even disputed by the appellant. We quote from her testimony:

"I received every payment provided for in the decree and stipulation from Mr. Johnstone up to the month of September, 1937, and each of them contained a notation indicating the object of the check and I made no objection to those prior to September. I had no difficulty in cashing them."

In the summer of 1937, Lewis, having graduated from high school, was ready to go to college. There arose the question of what college he was to attend. It was Lewis' desire to go to Dartmouth. Apparently in the beginning appellee also gave favorable consideration to Dartmouth, but a dispute arose between the father and son and the father suggested, among other colleges, the University of Wisconsin, and advised the appellant (his former wife) that he would not be responsible for the expense at Dartmouth in excess of $100 per month. Lewis was sent to Dartmouth. In September appellee, in the ordinary manner that had been followed for some time, thru his attorney, delivered to the attorney for appellant, in Keokuk, a check in the amount of $100, upon which there was a notation, "in full for support of Lewis and maintenance of home in September, 1937." Thereafter, on the first of each month, appellee tendered to the attorney representing appellant check in the amount of $100, with similar notations, and these were refused. The expense of Lewis at Dartmouth, according to appellant, amounted to $1,739.20, and it is that amount which she seeks to recover in this case.

1. The first proposition raised is that the court erred in not making an order, citing appellee to appear and show cause why he should not be adjudged in contempt of court.

It is claimed by the appellee that since this is a proceeding to punish for contempt, certiorari and not appeal is the proper method of review. We do not find it necessary to pass upon that question. We believe the lower court was right in refusing to issue a contempt order, for it is obvious from an examination of the record that the appellee was not wilfully in disobedience of the decree of the court. This court has held that a party will not be adjudged to be in contempt of court unless his disobedience is wilful, and proof of guilt must be clear and satisfactory.

In Porter v. Maxwell, 208 Iowa 1224, 226 N. W. 917, this court, at page 1225, 226 N. W. at page 918, said:

"Disobedience to a court order or decree in a case of this character must be willful; and when the facts disclose that the disobedience alleged is not willful, then there is no contempt."

In the case of Sawyer v. Hutchinson, 149 Iowa 93, 127 N. W. 1089, we find the following at page 94, 127 N. W. at page 1090:

"Again, a contempt proceeding, being *quasi* criminal in nature, calls for a greater weight of evidence than an ordinary civil case, and the rule generally prevailing in other states is that a clear case should be made out before an accused will be punished for violating an injunctional decree."

At no time did the appellee refuse to contribute to the education of his son. There was an honest and genuine disagreement between the parties respecting the college which the son should attend, and the amount of money that should be expended upon his education. Appellee informed appellant that he would not contribute over $100 per month towards the son's college education. There were many colleges of standing the son could have attended without incurring a greater expense than this. It was appellant's desire, and no doubt Lewis' also, that he go to Dartmouth. From an examination of the expenses listed in this record it is evident that a boy desiring to attend Dartmouth could do so and enjoy all of the ordinary benefits on $100 a month. That appellee was willing to carry out the agreement as to college education is shown by the fact that around the first of each month he tendered a check for the sum of $100. Under the appellant's construction of the contract she would have the right to choose the school that the son would attend, and appellee under the contract would be guilty of contempt unless he paid the expenses incurred. It might be Oxford or some school in some foreign land, where the expense would run into the thousands of dollars, which in appellant's judgment was the proper institution for the son to attend. That a college education is desirable is not questioned by anyone. However, the cost of that education must not exceed an amount that the party liable for it is able to pay. That the appellee was willing and desired the son to have a college education is evident from the record before us. The distinguished and able trial judge had the witnesses before him. He was

510

familiar with the entire situation, and we believe he was right in refusing to cite appellee for contempt.

2. It is next alleged that the trial court erred in not including in his decree a judgment for specific performance of the contract, providing for the support and education of the minor children.

The provision of the contract which appellant would have specifically performed is the one above set out. An examination of the paragraph in controversy shows that it does not give to either party the exclusive right to choose the schools to which the children were to be sent, regardless of cost, but it rather indicates that such matters were to be left to the future agreement of the parties, for it says, "first party shall inform second party of the nature of the proposed instruction and the probable cost thereof." In other words, there is uncertainty and ambiguity in the contract. And, as this court said in the case of Fenton v. Clifton, 204 Iowa 933, 934, 216 N. W. 53:

"It is elementary that specific performance will not be decreed where there is uncertainty, ambiguity, or doubt respecting the contract. Harper v. Sexton, 22 Iowa 442; McDaniels v. Whitney, 38 Iowa 60; Batie v. Allison, 77 Iowa 313, 42 N. W. 306; Gould v. Gunn, 161 Iowa 155, 140 N. W. 380; Origer v. Kuyper, 183 Iowa 1395, 168 N. W. 119; Mitchell v. Mutch, 180 Iowa 1281, 164 N. W. 212; Cohen Bros. Iron & Metal Co. v. Shackelford Brick Co., 197 Iowa 674, 198 N. W. 318."

The same rule is announced in 58 C. J., section 96, at page 930, where the author said:

"To warrant a decree of specific performance thereof, a contract must be definite and certain, and free from doubt, vagueness, and ambiguity, in its essential elements and material terms. Clearness is required. The terms of the contract must be so clear, definite, certain, and precise, and free from obscurity or self-contradiction, that neither party can reasonably misunderstand them, and the court can understand and interpret them, without supplying anything or supplanting vague and indefinite terms by clear and definite ones through forced or strained construction. * * * "

The appellant cites the case of Dunham v. Dunham, 189 Iowa 802, 178 N. W. 551. We do not find that specific per-

formance was asked for in that case. Appellant also cites Gould v. Gunn, 161 Iowa 155, 140 N. W. 380, and in that case we find this court said at page 163, 140 N. W. at page 383:

"In the first place it is a general and well-settled doctrine that an uncertain and indefinite contract will not be specifically enforced in a court of equity. Of the many cases affirming this rule, we need only cite Corliss v. Conable, 74 Iowa 58, 36 N. W. 891; De Sollar v. Hanscome, 158 U. S. 216, 15 S. Ct. 816, 39 L. Ed. 956; Lowe v. Lowe, 83 Minn. 206, 86 N. W. 11; Moore v. Galupo, 65 N. J. Eq. 194, 55 Atl. 628."

And so in the case at bar, under the terms of the contract, the appellee is required to pay for the college education of his two children. However, the question of what college they shall attend, and the cost of the college education, is one which under the terms of the contract, as the lower court held, should be the subject of agreement between the parties. Since they were not covered by the original agreement they must be left to the future agreement of the parties or the determination of the court. Certainly, until these matters are determined, no court will grant an order requiring specific performance.

3. It is next claimed that the lower court erred in not entering judgment for the full amount claimed by the appellant for the cost of maintaining Lewis at Dartmouth College for a year, in the amount of $1,739.20. There was no argument over the $1,000 due for the daughter.

The evidence as to the cost consisted of the testimony of the son and certain accounts made up by the appellant. The lower court had the witnesses before him, heard the evidence, went thru the various items claimed, and deducted the amount of $345.70, entering judgment for $1,393.50. It is apparent from the court's order that deductions were made on the claim for clothing and transportation. No good could be accomplished by setting out the evidence. We believe the lower court was right, and we find no evidence that would justify us in changing the amount.

4. It is next claimed that the court erred in not entering judgment for suit money, including a reasonable attorney's fee.

This is not an original proceeding but a supplemental or auxiliary proceeding in the original divorce action. In the

original divorce action the court allowed appellant's attorneys the sum of $5,000.

In the case of Nicolls v. Nicolls, reported in 211 Iowa 1193, 235 N. W. 288, this court, speaking thru Justice Kindig, said at page 1201, 235 N. W. at page 291:

"After arguing the merits of the controversy, as above related, appellant next contends that the district court should be reversed because it did not allow her attorney fees in the present proceeding. In Barish v. Barish, 190 Iowa 493, we declared, on page 500, 180 N. W. 724, on page 727:

" 'We are asked to tax an attorney fee in favor of the attorneys for the appellant [in a modification case]. She [appellant] is no longer the wife of the appellee. Section 3177 of the Code of 1897 [now section 10478 of the 1927 Code] provides that: "The court may order either party to pay the clerk a sum of money for the separate support and maintenance of the adverse party and the children, and to enable such party to prosecute or defend the action." We hold that neither this nor any other statute gives this appellant any better claim to the taxation of an attorney fee than is given any litigant who seeks to make a money recovery without having a contract for the taxing of attorney fees.' "

And so in the case at bar, appellant is no longer the wife of appellee. There is no provision in the contract that could be construed as allowing any such expense and appellant has no better claim to the taxation of attorney's fees than has any other litigant seeking a money judgment without a contract for attorney's fees.

II. We come now to the cross-appeal of the appellee.

1. It is first claimed that the court erred in striking from the appellee's cross-petition certain paragraphs contained therein.

We will not set out the paragraphs. We believe the lower court was right. There was no allegation of the truth of same. Neither was the appellee a party to the other case that he refers to in that part of his cross-petition which was stricken, and, clearly, the part stricken was immaterial to any issue in this cause.

2. It is next claimed that the court erred in not giving to the appellee the custody of the children.

The children at the time of the trial were approximately nineteen and seventeen years of age. The lower court in its findings said:

"There has been no sufficient evidence to convince the court that the present arrangement as to custody should be disturbed. The children are no longer infants and are capable of electing with which parent they wish to live."

With this we agree. The contract provides that each shall have custody for six months.

3. The next question raised by the appellee is that the court erred in refusing to modify the provisions of the divorce decree in regard to the support of the children.

Appellee argues that his financial conditions are so changed that there should be a change made in the amount which he is required to contribute.

It is true, the record clearly shows that there has been a change in appellee's financial condition; that the value of his property has shrunk from approximately $500,000 to around $100,000. But it shows that he has still sufficient property and income to carry out the terms of the agreement into which he entered. Appellee argues that appellant has an income and has property, and is therefore in a position to contribute. This record does show that appellant has an income of approximately $3,600 a year, and has property belonging to her. But we find no evidence in the record that would, in our judgment, justify the changing of the provisions of the contract, which were fairly entered into by the parties. In addition to this, the appellee thruout his brief and argument, and his evidence, stated his desire that the children have a college education. We believe the lower court was right in refusing to alter the provisions of the contract in regard to the support of the children.

A motion to strike appellant's brief and argument, and answering appellee's argument on cross-appeal, was submitted with the case, and is hereby overruled.

This is a case in which there is a long record. It has been ably presented by distinguished counsel for both sides. It is one of those unfortunate situations growing out of a divorce, the care, custody and support of minor children. The ones who must suffer most are the innocent ones, the children. The amounts in dispute are not large. It is unfortunate that these

people cannot agree. It would be far better for all concerned. But when individuals fail to agree, the duty to determine the questions involved falls upon the court. We have given careful consideration to all of the matters urged, and, finding no error, it necessarily follows that this judgment and decree must be, and it is hereby, affirmed.—Affirmed.

HAMILTON, STIGER, SAGER, HALE, BLISS, MILLER, and OLIVER, JJ., concur.