HENRIETTA G. GOULD, et al., Appellants, v. J. A. GUNN, Executor of the Estate of W. F. GOULD, Deceased, Appellee.

Contracts: CONSIDERATION: BURDEN OF PROOF. Under the statutes all executory contracts signed by the parties to be charged import a consideration, and the burden is upon the party alleging want of or failure of consideration to both plead and prove that fact. The rule however that all executory contracts must have a consideration does not apply to judgments.

1

Same: HUSBAND AND WIFE: SEPARATION AGREEMENT: ENFORCEMENT BY CHILDREN. A contract between husband and wife for a division of their property in contemplation of divorce, and a decree of divorce based upon the contract, when made for the benefit of children may be enforced by them.

2

Same: SPECIFIC PERFORMANCE. An uncertain and indefinite contract will not be specifically enforced in equity.

3

**Same:** UNCERTAINTY: PRACTICAL CONSTRUCTION. Where a written contract is so incomplete, uncertain, equivocal and indistinct that the meaning of the parties cannot be ascertained from the writing, the contract is void for uncertainty. And it is also void for uncertainty where it formulates no practical basis on which damage for its breach can be ascertained. However, a contract uncertain when made may, by practical construction after its execution, be rendered certain.

**Same:** DIVORCE: SEPARATION CONTRACT: CONSTRUCTION. Where a husband and wife contracted for a division of their property in case of a divorce, and that the decree for divorce should give all of the property, real and personal, and whether owned jointly or in severalty, to the wife and their children jointly, and the contract further provided that in case the husband derived any revenue from inventions or patents pending, he should make an equitable apportionment of the net proceeds among the children, when considered together, did not award the title to the inventions and patents to the wife and children as it did the other personalty, but that the husband reserved the title and use, agreeing simply to make an equitable division of the net profits arising therefrom.

**Same:** . SPECIFIC PERFORMANCE: UNCERTAINTY OF CONTRACT. A separation agreement by which the husband contracted to make an equitable distribution among his children of the net proceeds arising from inventions and patents, but failing to provide any definite basis of distribution, was too vague and uncertain to be enforceable in a court of equity.

*Appeal from Polk District Court.*—Hon. Lawrence De Graff, Judge.

Saturday, March 22, 1913.

Suit in equity to enforce a contract or claim against the estate of W. F. Gould, deceased. The nature of the claim was stated in an amended and substituted petition, which recited the facts at length, and to this, as amended, the executor of the estate demurred. This demurrer was sustained, and plaintiffs thereupon elected to dismiss a part of the third division of their petition as amended, and to stand upon the first two divisions thereof, and, having so elected,

the court ordered that the first two divisions be dismissed at plaintiffs' cost, and they appeal.—*Affirmed.*

*Bannister & Cox,* for appellants.

*Henry & Henry,* for appellee.

Deemer, J.—The action, so far as the first two divisions of the petition are concerned, is based upon a contract or contracts hereinafter to be referred to, and upon a decree of court rendered thereon. From the allegations of these pleadings, we gather the following facts: W. F. Gould and Anna, his wife, were married in November of the year 1873, and, as a result thereof, three children were born, who are the plaintiffs herein. W. F. Gould and his wife lived together until about May 11, 1900, and on or about June 2, 1900, a decree of divorce was granted the wife, Anna. In May of the same year they made and entered into a contract for the division of their property, which contract contained the folfowing, among other, provisions:

In case a suit for divorce shall be brought by either party and a divorce is decreed by the court, it is stipulated between said parties that the decree shall award all the property, real and personal, now belonging to and held by the said parties, jointly or separately, to Mrs. Anna Gould and to Henrietta Gould, Selina Gould, and Kittie Gould, jointly, each with right of survivorship in case of the death of either one without a child being born to them hereafter; that is, in case of the death of either one without a child being born as aforesaid, her right will pass to the survivors in equal proportions, share and share alike. . . .

Provision was then made for the payment, by W. F. Gould, of certain amounts toward the support of children, plaintiffs herein, graduated by the amount of salary received by him, and this was followed by these agreements:

It is further stipulated that, upon the marriage of either

of said daughters, all monthly payments to her will cease. It is further stipulated that the above arrangement as to property and support or alimony and the payment thereof shall be in full discharge of all and every liability of every kind on the part of W. F. Gould towards the maintenance and support of either Anna Gould, or either of said children, to wit, Henrietta Gould, Selina Gould, and Kittie Gould; and that neither of them shall have the right hereafter to pledge .the credit of W. F. Gould for anything whatever. It is further stipulated on the part of said W. F. Gould that, in case he should derive any revenues from inventions or patents which he has claimed to have invented, and which claims are issued and pending, that he will make, out of any net proceeds therefrom, a fair and equitable apportionment to each of their daughters, and will pay the same to them. Said W. F. Gould also further agrees that, in case his said daughters shall want to travel on the Rock Island road or any other, that he will, so far as shall be practicable for him to do so, obtain passes for such travel.

This agreement was signed by Anna and W. F. Gould, and, in the decree of divorce granted to Anna, the stipulations of this agreement were confirmed, and the decree confirmed, and the decree contains the following recitations and orders:

The court further finds by the introduction in evidence of the original agreement made between the parties, in respect to the disposition of the property between them, a copy of which agreement is annexed to and made a part of plaintiff's petition herein, that the parties were owners of the property in said agreement and petition described, and the title thereto should be vested by the decree herein as in such agreement specified. . . . It is further ordered, considered, and adjudged by the court that all the property, real and personal, now and heretofore belonging to and held by the said Anna Gould and said W. F. Gould, or either of them, be, and the same is hereby, awarded to the plaintiff Anna Gould and to their daughters Henrietta Gould, Selina Gould, and Kittie Gould, jointly, each with the right of survivorship in case of the death of either one without a child being born to them hereafter; that is, in case of the death of either one without a

child being born as aforesaid, her right will pass to the survivors in equal proportion, share and share alike. The real property herein and hereby so decreed, and the title to which is hereby vested in the said parties, free and clear from any claim of dower or other right in the said W. F. Gould, to wit: [Here follows the description of certain real estate]—together with all the personal property, including household and kitchen furniture, horse, buggy, and other personal property of every kind whatsoever. The complete legal and equitable title in all said property, real and personal, being hereby vested completely and entirely in the plaintiff Anna Gould and the three daughters of plaintiff and defendant as aforesaid, and in the manner and with the rights of succession and otherwise, as hereinbefore specified, free and clear from any and all claims of any and every kind on the part of said defendant, W. F. Gould.

This was followed by provision as to the support of the children, copying the terms of the agreement between the parties with respect thereto. And the decree concluded as follows:

It is further ordered, considered, and adjudged that, in case the said W. F. Gould shall hereafter derive any material revenues from inventions or patents which he claims to have invented, he will make out of any net proceeds therefrom a fair and equitable apportionment to each of said daughters, and will also, when practicable, provide passes for them to travel on the Rock Island road or any other where he may be able to obtain passes for such travel.

In May of the year 1900, and prior thereto, W. F. Gould had invented and claimed patents upon certain slide or balance valves, railway tie plates, and railway rail chairs, or improvements thereon, amounting to seven in number. The petition then recites that:

Said W. F. Gould did during his lifetime derive revenues and profits from the inventions and patents which he claimed to have invented, and the claims for which were issued and

pending at the time of making the said agreement Exhibit A, and which are specifically described in the foregoing paragraph. That said W. F. Gould during his lifetime did especially derive revenues and profits from patents No. 545,478 and No. 594,868, being patents for balancing side valves, for which said patents the said W. F. Gould did receive during his lifetime five hundred shares of the capital stock of the Gould Balance Valve Company of Kellogg, Iowa, a corporation, and said stock is now in the hands of the executor of this estate. That said W. F. Gould received during his lifetime, and his estate since his death has received, large sums of money as dividends on the said stock of the Gould Balance Valve Company, and have received other profits arising out of said company and out of said inventions. That, by reason of the matters and things hereinbefore alleged, the said shares of the capital stock of the Gould Balance Valve Company and the proceeds of the said patents and claims for patents which were issued and pending at the time of the execution of the said contract, Exhibit A, were and are charged and incumbered with an equitable lien in favor of the plaintiffs, Henrietta G. Gould, Selina G. Gould, and Kittie M. Old. . . . That, by reason of the matters and things hereinbefore alleged, Anna Gould, Henrietta Gould, Selina Gould, and Kittie M. Old became the owners of the entire beneficial interest in and to the patent rights and claims for patents hereinabove described, and merely the legal title to said patents was retained by said W. F. Gould for the purpose of developing the same and realizing thereon, and any revenues which he received from said patents by way of sale or from dividends on stock procured for said patents or otherwise were and are the property of the plaintiffs herein, in equal proportions, and said stock and said revenues are now held in trust by the defendant herein for the plaintiffs.

The petition also recites that Anna Gould, the wife, died single and intestate before the bringing of this suit, and that Kittie Gould married John Old, and that her name is now Kittie M. Old. The prayer is for an accounting from the executor of W. F. Gould's estate for the income derived from the patents, the establishment of plaintiffs' title in and to all of said patents, and the proceeds thereof, in whatever form,

or for a decree ordering the executor to execute and issue to plaintiffs proper assignments of all of the patents.

The first count or division of the petition is based upon the contract alone, and the second upon the decree rendered in the divorce proceeding. The demurrer is the general equitable one, and challenges the right of the plaintiffs to the relief demanded or to any other relief. We have already stated the ruling on this demurrer; but, as it was general in character, the exact points made thereby must be ascertained from a perusal of the brief filed for defendant. These are: First. The contract, relied upon in the first count of the petition, is without any consideration and void. Second. Both the contract and decree are so vague, uncertain, and indefinite as to be unenforceable, either at law or in equity, and that no court could determine the measure of damages for breach thereof. Third. It is contended that the parties themselves, when alive, put such a practical construction upon the contract as that thereunder neither the patents nor the revenues therefrom were intended, by either or any of the parties, to pass to plaintiffs, either by the decree or by the terms of the contract. It is to these points that we shall address ourselves, with the thought constantly in mind that all the allegations of the petition, which are well pleaded, must be accepted as true.

I. It is true, of course, that every executory contract must have a consideration for its support; but this rule does not, of course, apply to judgments, although, in a certain sense, judgments are contracts. Our statutes provide, however, that all contracts in writing, signed by the party to be bound, or by his authorized agent, shall import a consideration. Code, section 3069. The same Code also provides that want or failure of consideration of a written contract may be shown as defense, except in special enumerated instances, not necessary to be stated. Section 3070. The effect of these two sections, as heretofore interpreted, has been to put the burden upon

1. CONTRACTS: consideration: burden of proof.

defendant of both pleading and proving a want of or failure of consideration for a written contract. *Univ. of Des Moines v. Livingston,* 57 Iowa, 307; *Gary v. Aid Ass'n,* 87 Iowa, 25; *Goodpaster v. Porter,* 11 Iowa, 161; *French v. French,* 91 Iowa, 140. So that, upon any theory of the case, the question of consideration is out of the case, particularly for the reason that it could not, in any event, apply to the second count or division, which applies to the decree rendered by the district court.

II. While not especially relied upon by defendants, except as related to the question of consideration, we think that both the contract and the decree may be relied upon by plaintiffs;

2. SAME: husband and wife: separation agreement: enforcement by children.

as, upon the face of the contract and the decree, the same was made for their benefit, in whole or in part. This doctrine is somewhat confused with that of consideration on the theory that a benefit or consideration, moving from a third person to the promisor, will not support a contract, as in *Marston v. Bigelow,* 150 Mass. 45 (22 N. E. 71, 5 L. R. A. 43); *Curried v. Clark,* 15 Colo. App. 6 (60 Pac. 958), and other cases. But to our minds these matters are entirely distinct. Whether or not a third person may enforce a contract made for his benefit does not depend at all upon whether he has furnished the consideration for the agreement, although it must be conceded that in such contract there must be a consideration for the promise. This may consist, however, in some benefit conferred upon the promisor, or doubtless, in most cases, whether there has been any determent to the person with whom the promise is made. See *German Bank v. Northwestern Co.,* 104 Iowa, 717; *Messenger v. Votaw,* 75 Iowa, 225; *Davis v. Water Works Co.,* 54 Iowa, 59. We shall not, at this time, pry into the logic of these rules, or try to analyze the cases or to attempt the useless task of trying to harmonize them, for appellees make no point of the right of the plaintiffs to sue either upon the contract or the decree.

III. The only difficult question in the case is the second point made for appellee against appellants' right to recover

upon either contract or decree, because of the vagueness or uncertainty thereof, and the inability of the court to enforce the same, or to award damages for the nonperformance thereof. Connected with this is the minor question of the practical construction placed upon these two instruments by the parties themselves. As we read the arguments, it is contended for appellants that, under the contract and the decree, they took title to the various patents issued to W. F. Gould, deceased, and that they are entitled to all the revenues derived therefrom or to the property received therefor, or to an equitable part or portion thereof, to be fixed by the court, and that an accounting should be had to determine the amount to which plaintiffs are entitled, either under the contract or the decree. These claims are the only doubtful or debatable ones in the case.

Several rules are here applicable. In the first place it is a general and well-settled doctrine that an uncertain and indefinite contract will not be specifically enforced in a court

**3. SAME: specific performance.** of equity. Of the many cases affirming this rule, we need only cite *Corliss v. Conable*, 74 Iowa, 58; *De Sollor v. Hanscome*, 158 U. S. 216 (15 Sup. Ct. 816, 39 L. Ed. 956); *Lowe v. Lowe*, 83 Minn. 206 (86 N. W. 11); *Moore v. Galupo*, 65 N. J. Eq. 194 (55 Atl. 628).

Another general rule applicable to both law and equity is that, if the written terms, although intended for a contract, be so incomplete, uncertain, equivocal, or indistinct as that,

**4. SAME: uncertainty: practical construction.** after applying to them all permissible rules of construction, they are uncertain as to what the parties actually intended, there is no contract. In other words, if the meaning of the parties cannot be ascertained from the interpreted writing, the contract will be void for uncertainty. *Palmer v. Albee*, 50 Iowa 429; *Hollen v. Davis*, 59 Iowa, 444. In the former case it was said: ''If the contract is in a language not understood by the court, it must be interpreted; or, if some of the words have various meanings or peculiar technical applications not known to the court, then the circumstance under which the instrument

was made may be shown, not for the purpose of adding to or changing the instrument, but for the purpose of determining in what sense the parties intended to use the words actually used. 'In other words, and more generally, if the court, placing itself in the situation in which the testator or contracting party stood at the time of executing the instrument, and with a full understanding of the force and import of words, cannot ascertain his meaning and intention from the language of the instrument, then it is 'a case of incurable, hopeless uncertainty, and the instrument is therefore so far inoperative and void.' 1 Greenleaf on Evidence, section 300.''

So, also, it is generally held that a contract which formulates no practical basis upon which the amount of damages, for a breach, can be ascertained is void for uncertainty. *Pulliam v. Schimpf*, 109 Ala. 179 (19 South. 428). Of course courts are reluctant to declare any contract, and especially a written one, unintelligible or insensible, for the plain reason that the parties themselves usually intend to create some sort of obligation. But, nevertheless, neither the court nor the jury can make a contract for the parties, although either may resort to many rules to ascertain their intent when they go so far as to attempt the creation of some form of obligation. *Sinclair Co. v. Surety Co.*, 132 Iowa, 549; *Rapp v. Linebarger & Son*, 149 Iowa, 429.

Again, a contract, uncertain when made, may, by practical construction or otherwise, be made certain after its execution and before suit brought; and practical construction is often a safe guide whereby to determine the intention. *Daily v. Minnick*, 117 Iowa, 563; *Miller v. Kendig*, 55 Iowa, 174.

Claiming that a patent issued by the United States government is personal property, it is contended for appellant that under the terms of the contract, and in virtue of the 5. SAME: divorce: separation contracts: construction. decree entered thereon, plaintiffs, with their mother, became entitled to each and all of said patents and to the property received by Gould therefor, and that since the death of their mother,

without issue born after the making of the contracts, they, in virtue of the right of survivorship provided in the said contract and decree, became the absolute owners thereof, and are entitled to a decree so declaring. They make this claim because of the language of the contract and decree to the effect that there should be and was awarded to them all the property, real and personal, now belonging to or held by the parties to said agreement. Conceding, as we must, that patents are incorporeal personal property [*McCormick Co. v. Aultman Co.*, 169 U. S. 606 (18 Sup. Ct. 443, 42 L. Ed. 875); *De La Vergue Co. v. Featherstone Co.*, 147 U. S. 209 (13 Sup. Ct. 283, 37 L. Ed. 138); *Cammeyer v. Newton*, 94 U. S. 225 (24 L. Ed. 72)], it is apparent that the language which we have quoted from the contract and decree, taken by itself, would be sufficient to pass the title to the plaintiffs. But we must, of course, look to the entire language of both contract and decree to gather their meaning.

Taking up the contract first, we find that, in addition to the parts already quoted, it contained the following recitations and expressed inducements:

. . . Whereas the parties have heretofore owned several pieces of real estate, including the homestead on Ninth street in Des Moines, the title to which real estate has by previous arrangements been conveyed to Anna Gould, so far as such title could be conveyed while the marriage relation existed, and said parties are also owners of certain personal property, proceeds of rents, and other things, and also owe some debts connected with the support of the family hitherto and in the management of the properties, now, therefore, this agreement by and between W. F. Gould, party of the first part, and Anna Gould, his wife, in case a suit for divorce shall be brought by either party and a divorce is decreed by the court, it is stipulated between said parties that the decree shall award all the property, real and personal, now belonging to and held by the said parties, jointly or separately, to Mrs. Anna Gould and to Henrietta Gould, Selina Gould, and Kittie Gould, jointly, each with the right of survivorship in case of the death of either one without a child being born to them

hereafter; that is, in case of the death of either one without a child being born as aforesaid, her right will pass to the survivors in equal proportions, share and share alike.

Again in the decree, which was, as we think, a judicial determination of the effect of the contract, the personal property is referred to in the language hitherto quoted, following the description of the real estate, which was not specifically described in the contract.

Patents and inventions are referred to in the latter part of both the contract and the decree, in the language already mentioned, and the deceased obligated Gould that, out of the net proceeds therefrom (thereof), he will make a fair and equitable apportionment to each of said daughters (meaning the plaintiffs herein). The primary question in the case there is, Did the deceased agree that these patents should be awarded to the plaintiffs, or to them and to their mother jointly, with right of survivorship? This solved, the next question is, Were these patents awarded to plaintiffs by the decree, or, if not so awarded, may plaintiffs still rely upon the contract, and either specifically enforce it, or ask damages or for an accounting? No attempt is made to secure a modification of the decree, and the contract, for that reason, seems to be merged therein; and the final question is, Does it award these patents to the plaintiffs? If so, the judgment of the trial court should be reversed; if not, it should be affirmed. If there had been no ambiguity or doubt about this matter, there would have been no lawsuit; and one of the hardest questions with which we have to deal is that concerning the proper interpretation of language used in contracts and often in decrees of court. .

Looking to the language of the decree with reference to the personal property intended to be awarded to plaintiffs thereunder, and considering the language subsequently used with respect to patents, we are constrained to hold that the award of personal property, which is described in both gen-

eral and specific terms, did not award to plaintiffs the patents then held by Gould. If it did, then certainly there is a conflict between this award and the provision for the disposition of the net revenues from the inventions or patents, which deceased then claimed to have invented.

If these plaintiffs took the title to these patents as personalty, the same as they did to the other property described, then they were of right entitled to all the net revenues therefrom instead of a just and equitable distribution thereof, unless, as plaintiffs contend, nothing but an equitable interest therein passed to plaintiffs, or a legal interest, subject to a life use in the deceased. And, if that be true, why say that this was his intent as to patents, but not to other personal property, although the general provision as to personal property is broad and comprehensive? As we must give all the words used some force wherever the same be possible, it seems to us that the deceased himself differentiated his personal property and segregated his patents from furniture, horse, and buggy and other personal property, which, under the general rules of construction, would mean other personal property of like kind to that specifically mentioned, and reserved to himself, not only the title, but the use of his inventions or patents which he claimed to have invented, agreeing only, out of the net proceeds, to make a fair and equitable apportionment to each of his daughters. If he reserved the revenues from these inventions or patents, we must assume that he also reserved the title, for a patent cannot be used as other personal property. It must either be sold or licenses granted to manufacture thereunder, with a royalty, and, in either event, the owner must sell or license. So that he must have reserved that power, and this must have been in the contemplation of the parties. It is a forced and unnatural construction to say that the patents were transferred subject to a life use in the patentee, for to do so would involve a segregation of this kind of personal property from the other, although in the first part of the contract, if patents are cov-

ered at all, they are in the same general terms as other personal property.

We must, as it seems to us, differentiate between the different kinds of personal property covered by the contract and decree, rather than the tenure by which they are held in order to arrive at the intent of the parties. They themselves undertook to distinguish between patents and other kinds of personalty, and, in so doing, made a distinction which cannot be disregarded without doing violence to the terms used. In other words, inventions and patents were distinguished from other forms of personalty, and, as to the former, the deceased was to have the use and control thereof, and obligated himself simply to make some distribution of the net proceeds arising therefrom. It would be a forced and unnatural construction to say that he intended these patents and inventions to pass to plaintiffs as other personalty.

One other argument which is negative rather than affirmative grows out of the facts shown by the record. The first is that plaintiffs never at any time made any demand for the patents, or the receipts thereof, either during the lifetime of Gould or after his decease from his executor, and made no claim to the patents themselves under either count 1 or 2 of their petition until they filed an amendment to their petition on the 12th day of July, A. D. 1911. Their main contention, prior to that time, was that they were entitled to a share of the net income therefrom rather than the *corpus* of the property.

IV. The only other proposition in the case is the right of plaintiffs to a share of the net income from the inventions and patents under the latter clause of the contract and decree.

6. SAME: specific performance: uncertainty of contract. Here the rule as to ambiguity and uncertainty applies. The exact agreement which was reproduced in the decree was that, "if the deceased shall (should) derive any revenues from his inventions or patents, he will (would) make, out of any net proceeds therefrom, a fair and equitable apportionment to each

of their said daughters, and will (would) pay the same to them." The right of the plaintiffs to join in an action to recover under these clauses of the contract and decree is not questioned, so we pass that proposition without further comment. Plaintiffs allege that the net proceeds from these patents amounted to $50,000, and they asked an accounting and decree which would fairly and equitably apportion the amount of the net income among the plaintiffs. The agreement on the part of the deceased was that he would make a fair and equitable apportionment of the net proceeds to each of the daughters, and would pay the same to them. He did not make any apportionment; and the controlling question here is, Will a court of equity undertake an ascertainment of the net revenues, and then make such a division thereof, as it thinks just and equitable to each of said daughters, in the absence of any such apportionment by the deceased? While a court of equity has much larger power than a court of law, it will not, as a rule, substitute its judgment for that of the party in whom a discretion is vested.

The deceased obligated himself to make a fair and equitable apportionment to each of the daughters. What this should be was primarily for the obligor to determine, and, having determined it, a court would not be justified in interfering. If he made none, there is no definite basis for distribution upon which a court of equity may act. Not only was it left to the discretion of the obligor to make a distribution, but the character thereof was purely a matter of his own volition not subject to review, as we think, during his lifetime, nor for determination, after his death, by a court of equity. In other words, both the contract and decree are, in this respect, too vague and uncertain to furnish the basis of an action, either at law or equity. The following cases have more or less bearing upon this subject: *Faulkner v. Drug Co.*, 117 Iowa, 120; *Adams v. Adams*, 26 Ala. 272; *Sherman v. Kitsmiller*, 17 Serg. & R. (Pa.) 45; *Marble v. Standard Oil Co.*, 169 Mass. 553 (48 N. E. 783); *Thomas v. Shooting Club*, 123

N. C. 285 (31 S. E. 654). Each and all of these cases announce the principles which must govern this feature of the case. They each proceed upon the theory that where an action is for breach of an express contract, and the measure of damages is so uncertain that neither court nor jury has any guide as to the measure of damages, or the amount agreed to be paid, it is so uncertain that it cannot be enforced. Here there is no method whereby to determine the measure of damages, nor the amount to which each of the plaintiffs would be entitled under a fair and equitable apportionment. Whether or not the obligor was to retain anything for himself, and in what proportion the earnings should be divided, is left in the gravest doubt and uncertainty; and, as hereinbefore remarked, it is not the province of courts to make contracts for the parties. If they fail to express themselves in language capable of being understood, there is no contract which can be enforced, nor mutual meeting of the minds upon any definite proposition. An agreement to pay an indefinite sum of money, without any definite guide as to how the amount shall be ascertained, is incapable of enforcement. The maxim, *"Id certum quod certum reddi potest,"* does not apply to such a case.

Some of the questions presented are close, and, to say the least, debatable; but, looking at the whole record, we are constrained to hold that the trial court did not err in sustaining the demurrer, and the judgment must be, and it is, *Affirmed.*