## MEREDITH v. JOHN DEERE PLOW CO. OF MOLINE.

### Civ. No. 1-12.

United States District Court
S. D. Iowa, Western Division.
March 30, 1950.

Whitmore & Gaffney, Atlantic, Iowa, Dalton & Dalton, Atlantic, Iowa, and John J. Hess, Council Bluffs, Iowa, for plaintiff.

Shotwell, Vance & Marchetti, Omaha, Neb. and Kimball, Peterson, Smith & Peterson, Council Bluffs, Iowa, for defendant-movant.

SWITZER, District Judge.

The above entitled matter came on for hearing in open court at Council Bluffs, Iowa, on the 6th day of March, 1950, on a motion of the defendant to dismiss the complaint herein for failure to state a claim upon which relief can be granted. The matter was submitted after oral argument was had and written briefs presented and, being advised in the premises, the court finds:

### Statement of Facts

The complaint is stated in two divisions. The alleged agreement of agency relied upon by the plaintiff as stated in Division I, was, in substance, as follows:

That in the year 1919 C. P. Meredith, the father of plaintiff, made and entered into an oral agreement with the defendant company, by the terms of which said C. P. Meredith was to handle and sell the line of machinery and merchandise of the defendant company in the cities of Atlantic and Griswold, Iowa, and the territory contiguous thereto, and that C. P. Meredith continued under said contract and agreement to handle said line and represent the defendant in said cities and territory until his death in the year 1932; that by the terms and provisions of said oral contract of agency, it was agreed and the plaintiff so obligated himself to endeavor to sell to his customers such items of farm implements and such accessories thereto as were being handled by and could be supplied by the defendant company, and the defendant company agreed and obligated itself to supply to this plaintiff such articles of farm implements and accessories from its line as might be necessary from time to time to supply said sales as made, at the price and upon the terms designated in the catalogue issued by the defendant from time to time; that upon the death of said C. P. Meredith, this plaintiff succeeded to the ownership of said business, since which time he has continued to operate the same and assumed all

the assets of the former company belonging to said C. P. Meredith, and at the time of the assumption thereof, this plaintiff was assured by the defendant of a continuation to him of said agency contract and relationship previously made and entered into with the defendant and by said C. P. Meredith along the lines as had previously existed; that during all of the years the business now owned by the plaintiff, was owned and operated by his predecessor, the said C. P. Meredith, and during the time that this plaintiff has operated said business as his own, this plaintiff devoted much time and effort and money creating and building up a permanent business structure for the continued increase and development of the good-will and enlarged sales of the lines of implements then being sold by the defendant, and that in doing so did create an ever-increasing demand for the merchandise of the defendant company; that the plaintiff and his predecessor, during all the said years, exerted themselves honestly and faithfully to create a demand for the line of merchandise then being offered for sale by the defendant, relying upon the assurance, both expressed and implied, that the placing of said agency with him by the defendant would be of a permanent nature and this relationship would not be severed or discontinued in the absence of some serious lack of effort or fidelity on the part of the plaintiff in connection with his handling of said line.

That on or about the month of January 1945, the defendant notified the plaintiff of its intention to terminate said contract of agency and did terminate the same, thus depriving the plaintiff of the fruits of his labor and expense incurred in building up and creating a demand for the merchandise being offered for sale by the defendant; that the defendant severed said contract relationship without suggesting or offering any sort of excuse for so doing; that as a result the plaintiff has sustained financial loss, for which he has in no way been compensated.

The alleged agency agreement relied upon by the plaintiff, as stated in Division II, was in substance as follows:

That in November 1919, the defendant offered, if C. P. Meredith would desist his competitive hostility to defendant, and defendant's products, and would become defendant's agent in Atlantic and Griswold, Iowa, that then C. P. Meredith could remain defendant's agent in said towns as long as C. P. Meredith desired, the termination of said agency being possible only by voluntary relinquishment on C. P. Meredith's part, forfeiture through gross fault, or defendant's retirement from business; that until C. P. Meredith voluntarily relinquished said agencies or forfeited them through gross fault, defendant would appoint no one else as its agent in said towns; that it would at no time make any unusual, radical or unreasonable demands of C. P. Meredith; that C. P. Meredith would, for a reasonable time, be neither expected nor asked to purchase and carry in stock any of defendant's products and that at the expiration of said reasonable time, the amount of his said purchases should be entirely at his discretion. That this offer, orally made, thereupon was orally accepted by C. P. Meredith, who thereupon became defendant's agent in Griswold and Atlantic, Iowa; that at the time said oral agreement was made, plaintiff was and had been for some years prior thereto assisting C. P. Meredith, his father, in the operation and management of the above described business, having entered into such duties only after making a definite agreement with C. P. Meredith that he, plaintiff, was to succeed said C. P. Meredith in said business. Plaintiff alleges that many circumstances tend to prove that at the time of making said oral agreement, both C. P. Meredith and the defendant intended the same to be, not a personal agreement with C. P. Meredith, but an agreement applicable to C. P. Meredith's business, which would pass in full force and effect to the successors of C. P. Meredith in said business, and further alleges that shortly after said oral agreement was made, defendant became aware of plaintiff's intention to succeed C. P. Meredith in said business and that defendant, possessed of such knowledge, not only failed and neglected to notify plaintiff it had no intention of carrying out such agreement

with plaintiff, but on the contrary assured plaintiff that defendant considered plaintiff entitled to all the rights of C. P. Meredith in such contract and fully intended to carry out such contract with the plaintiff when and if plaintiff succeeded C. P. Meredith in such business; that subsequent to the making of said oral contract with C. P. Meredith, defendant many times solicited plaintiff to perform acts he was under no legal obligation to perform, and gave as its reason for such solicitations the fact that plaintiff was assured of succeeding to all the rights of C. P. Meredith under such contract when and if plaintiff succeeded to said business; that relying upon said solicitation plaintiff did perform many acts he was under no legal obligation to perform and would not have performed had defendant not given him such assurances. That in the year 1934, plaintiff succeeded to the business of C. P. Meredith at Griswold, Iowa, and on April 1, 1943, he succeeded to the business of C. P. Meredith at Atlantic, Iowa; that defendant was immediately notified of plaintiff's acts of succession in each instance, and defendant not only failed and neglected to notify plaintiff of any change in relationship between the defendant and said business, but on the contrary continued to transact its affairs with the said two stores in exactly the same manner as it had hitherto done.

That for 25 years after making said oral agreement and pursuant thereto, C. P. Meredith and his successors continuously and faithfully acted as agents for defendant in said towns of Atlantic and Griswold, Iowa; that in 1945, defendant without prior notice to plaintiff, contracted with another than the plaintiff to be its agent in Griswold, Iowa; that defendant did such act knowing the same to be contrary to the desire of the plaintiff and without claim that plaintiff had forfeited his rights under said oral contract; that in the early part of 1945, defendant, contrary to the known desire of the plaintiff, contracted with another to act as his agent in Atlantic, Iowa; that defendant made no claim that plaintiff had forfeited his rights in Atlantic, Iowa, secured to him by the above described oral contract; that during the period between

October 1919 and the latter part of 1945, the plaintiff at the request of the defendant performed various acts which plaintiff was not legally bound to perform, and that defendant almost invariably accompanied such requests with statements to the effect that defendant recognized plaintiff's right to remain as defendant's agent in Atlantic and Griswold so long as he desired and defendant many times on such occasions assured plaintiff he could remain defendant's agent so long as he desired, that only voluntary relinquishment or forfeiture through his gross fault would plaintiff cease to be defendant's agent in said towns; that by well established trade customs said defendant means and plaintiff understood defendant to mean "exclusive" agent whenever defendant referred to plaintiff's right to act as defendant's agent in said requests; that he would not have performed said various acts had he known, believed or suspected defendant in any manner denied or disputed his right to act as defendant's sole agent in Atlantic and Griswold, Iowa, so long as plaintiff desired or until plaintiff forfeited such right by gross fault.

That in October 1919, the agencies of defendant in both Atlantic and Griswold were small or of nominal value due to the fact that neither defendant nor defendant's products were well or favorably known in said localities at that time; that in the latter part of 1945 the agencies of defendant in both said towns were of recognized great value; that said enhancement in value of said agencies was largely due to the efforts which, with defendant's approval, plaintiff and plaintiff's predecessor, C. P. Meredith, had successfully made to popularize both defendant and defendant's products in said localities and to sell defendant's products to residents of said localities.

The prayer of the complaint is that plaintiff be awarded a judgment against the defendant for the sum of $200,000.00 and costs.

The alleged oral contract claimed by the plaintiff and upon which he bases his cause of action, as set forth in both divisions I and II, is the same as the alleged oral contract entered into between C. P. Meredith,

the father of the plaintiff, and the defendant, on or about November 1919, to which he, in some indefinite and not clearly defined manner succeeded, but assuming for the purpose of argument of this motion that plaintiff did in some way succeed to the alleged oral agency contract of C. P. Meredith, his claimed oral contract of agency was the same as that of C. P. Meredith and no different.

It will be noted that in Division I the plaintiff claims that the period of the agency would be "of a permanent nature and the relationship would not be severed or discontinued in the absence of some serious lack of effort or fidelity on the part of the plaintiff in connection with his handling of said line." Whereas, in Division II, he alleges that the agency agreement between C. P. Meredith and the defendant was that if C. P. Meredith would become defendant's agent in Atlantic and Griswold, Iowa, then C. P. Meredith could remain defendant's agent in said towns as long as C. P. Meredith desired, the termination of said agency being possible only by voluntary relinquishment on C. P. Meredith's part, forfeiture through gross fault, or defendant's retirement from business; that until C. P. Meredith voluntarily relinquished said agencies or forfeited them through gross fault, defendant would appoint no one else as its agent in said towns; that C. P. Meredith would for a reasonable time be neither expected nor asked to purchase and carry in stock any of defendant's products and that at the expiration of said reasonable time the amount of said purchases should be entirely at his discretion.

## Opinion

■ In considering a complaint and determining its sufficiency, it is enough if the complaint alleges or states facts sufficient to entitle the plaintiff to relief. Guth v. Texas Co., 7 Cir., 155 F.2d 563; Fargo Glass & Paint Co. v. Globe American Corp., 7 Cir., 161 F.2d 811, 813, wherein Judge Minton said: "These facts are admitted by the defendant's motion to dismiss. If the plaintiff is entitled to any relief under these facts, the motion to dismiss should have been overruled."

■ Judged in its most favorable light, plaintiff's petition here has pleaded an oral contract, in each of the two divisions thereof, factually comparable in all respects with the written contract considered by the Circuit Court of Appeals of this Circuit in the case of E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 64 F.2d 224, at page 228, 89 A.L.R. 238, wherein Judge Sanborn, speaking for the court said: "If there is uncertainty, lack of mutuality, or lack of consideration in the contract with which we are concerned, it arises out of the fact that the Reno Company was in a position at any time to terminate the contract without incurring any liability therefor. Had the contract been one for a definite term, it might have been sustained upon the authority of Marrinan Medical Supply, Inc., v. Fort Dodge Serum Co., [8 Cir., 47 F.2d 458]. The only substantial difference between the contract involved in that case and this contract was that the former was to continue for a definite period, and both parties were bound by it during that period. It is placing an unnatural construction upon this contract to hold that the promises made by the Reno Company and their performance constituted the consideration for the Dupont Company remaining bound so long as it was satisfied, and that its promise in that regard was bought and paid for."

True the contracts pleaded in each of the two Divisions in the instant case are oral, whereas in the Claiborne-Reno case the contract was written. In each of the two cases however, the sales agency contract permitted the agent to terminate the same at his pleasure without liability therefor to the manufacturer and neither contract was one for a definite term. No monetary consideration was paid to induce them and no consideration over and above that which customarily follows by usage in the business was required or flowed from the sales agent to the manufacturer.

■ The contracts pleaded in this case are executory and bilateral in their character and, as was said in the recent Iowa case of Lewis v. Minnesota Mutual Life Ins. Co., Iowa, 37 N.W.2d 316, where plaintiff sought recovery of damages for claimed

breach of the contract of agency entered into between himself and the defendant, which alleged contract bound the defendant for the lifetime of the plaintiff but permitted plaintiff to terminate it at will:

"A contract will be construed to impose an obligation in perpetuity only when language of contract compels such construction." (syllabus 5) And

"Where one party to contract is not bound to perform it and cannot be held liable for failure of performance, there is a lack of 'mutuality' and contract is unenforceable." (syllabus 11)

The Iowa Supreme Court in the Lewis case, supra, assembled and discussed with favor many of the leading cases on this subject, including E. I. Du Pont De Nemours Co. v. Claiborne-Reno Co., supra, and at page 321 of the Northwestern citation in 37 N.W.2d the court said:

"The plaintiff's claim for damages is based upon the cancellation of his claimed lifetime contract. In considering a contract of this character we should give attention to the statements of this and other courts relative to such agreements. In the case of Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 270, 271, the Missouri court in commenting upon this question quoted from the case of James Maccalum Printing Co. v. Graphite Compendius Co., 150 Mo.App. 383, 391, 392, 130 S.W. 836, 838, as follows:

" 'The courts are prone to hold against the theory that a contract infers a perpetuity of right or imposes a perpetuity of obligation. Yet it seems to be the law in this state that, where the intention to do this is unequivocally expressed, the contract will be upheld. * * * But in this jurisdiction, as in others, courts will only construe a contract to impose an obligation in perpetuity when the language of the agreement compels that construction.'

"Later in the Paisley case it is stated by the writer of that opinion that: ' * * * A contract for life will be upheld only where the intention, that the contract's duration is for life, is clearly expressed in unequivocal terms. * * *'

"In the case of Faulkner v. Des Moines Drug Co., 117 Iowa 120, 122, 123, 90 N.W. 585, 586, this court made a statement which is quite applicable to the instant case and is as follows:

" ' * * * It is not conceivable that in entering into the contract in suit plaintiff supposed he was entering a service from which nothing but death or the consent of the defendant could relieve him. It is equally incredible that defendant supposed or understood that it was thereby taking into its employment a person whom it was bound to retain in its service until such time as that person should consent to his own discharge. If we should hold the contract enforceable according to its literal terms, the defendant could never abandon or sell or dispose of its business without plaintiff's consent, even though its prosecution entailed certain loss or bankruptcy; * * *.'

" * * * As to the definiteness of a contract it is stated in Ingram-Day Lumber Co. v. Rodgers, 105 Miss. 244, 62 So. 230, 48 L.R.A.,N.S., 435, Ann.Cas.1916E, 174, that the terms of a contract must be complete and sufficiently definite to enable the court to determine whether it has been performed or not. The terms and conditions are not sufficiently definite unless the court can determine therefrom the measure of damages in the case of a breach. In the case now before us it is the plaintiff's claim that the company was under obligation to give him lifetime employment but there is nothing in the claimed modified contract by which the plaintiff was obligated to continue in employment for any length of time. There is not sufficient evidence of a contract by which the defendants could be held to any definite damages.

\* \* \* \* \* \*

"In the case of Faulkner v. Des Moines Drug Co., supra, the agreement was for employment at 25% of the net profits until mutually agreed void. Since such agreement, if enforcible, could only be terminated by the consent of both parties, it would be indistinguishable from a life contract, but in that case the court held that it was unenforcible or uncertain as to time of employment, and further held that it was unenforcible by reason of the fact that there was no basis or standard upon which the damages for breach of contract could be as-

certained. This case is cited and approved in Gould v. Gunn, 161 Iowa 155, 140 N.W. 380. * * * Ingram-Day Lumber Co. v. Rodgers, supra, in which, like the Faulkner case, the contract was held void because of indefiniteness.

\* \* \* \* \* \*

"In the instant case there is an absence of evidence showing that there was any additional consideration for the claimed lifetime agreement. The giving up of the opportunity to take other employment cannot be held to be an additional consideration."

The Court then, 37 N.W.2d on page 324, sets out the editorial statement of the rule in 35 A.L.R. 1432:

" 'In most of the jurisdictions passing on the duration of a contract purporting to be for permanent employment, it is held that, in the absence of additional express or implied stipulation as to the duration of the employment or of a good consideration additional to the services contracted to be rendered, a contract for permanent employment, for life employment, for as long as employee chooses, or for other terms purporting permanent employment, is no more than an indefinite general hiring terminable at will of either party.' \* \* \*

"It has been uniformly held that where one party to a contract is not bound to perform it and cannot be held liable for failure of performance there is a lack of mutuality and it is unenforcible. \* \* \* "

Plaintiff here alleges that he and his father before him expended large sums of money that they were not obliged to expend in the promotion and development of the defendant company's business, that as a part of the agreements pleaded both agreed to abstain from competition with the products of the John Deere Plow Company, that they made un-businesslike deals and expended large sums of money in advertising and sales promotion, or in reliance upon representations of the defendant that the contracts pleaded would be continued by the defendant in accordance with their respective terms and until such time as plaintiff desired to terminate such contract.

■ Expenditures made by the plaintiff here that he was "not legally obligated to make" must necessarily be outside the terms of the contract pleaded and not an allegation of anything upon which damages could be recovered for an alleged breach of contract and therefore irrelevant for any purpose in determining the sufficiency of the motion to dismiss here.

Likewise, in the case of Santaella & Co. v. Otto F. Lange Co., 8 Cir., 155 F. 719, the court at page 725, said: "In support of the motion for rehearing counsel have extensively gone into a review of the case in the attempt to show that the opinion of the court improperly held that the contract in question was unilateral, placing such stress upon the contention that the testimony of Mr. Lange tended to show that a part of his undertaking under the arrangement between the parties was that he should, by his experience and labor, extend the field for the sale of the cigars to be furnished by the plaintiff in error, thereby creating a larger market for them, and that he performed in this respect his undertaking. Let it be so conceded. But how does this obviate the stubborn fact that whether or not he would maintain that field and demand, occupy or abandon it, or cease, ad libitum, to send in any orders, or betake himself to some other field of operation and employment, were wholly optional on the part of the defendant in error? The plaintiff in error, on such election by its purchaser, was without remedy. It could not compel the proposed purchaser to want any cigars. It could not ship a box of cigars, except as ordered by the purchaser. As shown in the opinion, both parties so recognized the situation and acted upon it when the defendant in error directed that the orders already in be not filled. That such a contract is one-sided, wanting in that mutuality essential to its enforcement, is settled in this jurisdiction."

And as Judge Parker said in the case of Ford Motor Co. v. Kirkmyer Motor Co., 4 Cir., 65 F.2d 1001, at page 1006: "While there is a natural impulse to be impatient with a form of contract which places the comparatively helpless dealer at the mercy of the manufacturer, we cannot make contracts for parties or protect them from the provisions of contracts which they have

made for themselves. Dealers doubtless accept these one sided contracts because they think that the right to deal in the product of the manufacturer, even on his terms, is valuable to them; but, after they have made such contracts, relying upon the good faith of the manufacturer for the protection which the contracts do not give, they cannot, when they get into trouble, expect the courts to place in the contracts the protection which they themselves have failed to insert." See also Tamm v. Ford Motor Co., 8 Cir., 80 F.2d 723.

■ Certainly, in this case, the John Deere Plow Company could at no time have entertained a suit for specific performance of the contracts pleaded. It was the ever-present prerogative, and without cause shown, for the plaintiff and his father before him to terminate these contracts or either of them at will. This very fact is perhaps a determinative test with reference to mutuality or the lack of it. As Judge Sanborn put it in the Claiborne-Reno Co. case, supra, 64 F.2d at page 232: "We gather, from the cases in this and other circuits to which we have referred that, where a contract is so lacking in mutuality of obligation or certainty of consideration that it may be canceled, as in [Woerheide v. Barber Asphalt Paving Co., 8 Cir., 251 F. 196], or that specific performance will be denied on that sole ground, as in [Miami Coca-Cola Bottling Co. v. Orange Crush Co., 5 Cir., 296 F. 693], its termination by either party creates no liability for damages resulting from a refusal to carry on."

Having decided that the instant contracts were void for want of mutuality and because of indefiniteness as to the terms, we must now assume that the contracts pleaded were terminated by the defendant company in bad faith to the great loss and detriment of the plaintiff here. On this point, Judge Sanborn, speaking in the Claiborne-Reno Company case, 64 F.2d at page 233, said:

"Our conclusion, therefore, is that, whether the termination by the Du Pont Company was in good faith or bad faith, no action for damages could be based upon it.

"We have much sympathy with the theory upon which the case was disposed of in the court below. It seems fair that, after having spent six years in developing the territory assigned to it, the Reno Company should have been permitted to continue or should have been compensated for the injury done it by having its business taken away. However, the injury done to the Reno Company was one against which its contract, rather obviously, did not afford protection."

Thus the allegation of bad faith lends nothing to the support of this complaint.

Of course, as was said by Judge Sanborn speaking in the Claiborne-Reno case, supra, there are some decisions wherein the courts have reached a contrary result to those here announced. This is however the minority view and not the one adhered to in the 8th Circuit or by the Supreme Court of the State of Iowa. Plaintiff in his argument cites Atlas Brewing Co. v. Hoffman, 217 Iowa 1217, 1218, 252 N.W. 133, Hichhorn Mack & Co. v. Bradley, 117 Iowa 130, 90 N.W. 592, and Kaufman Bros. v. Farley Mfg. Co., 78 Iowa 679, 43 N.W. 612, 16 Am. St.Rep. 462, which were cited and relied upon by the plaintiff in the case of Lewis v. Minnesota Mutual Life Ins. Co., supra, and those cases were discussed in both the majority and the dissenting opinions.

In the Hichhorn and the Atlas cases, no question was raised that the contract lacked mutuality of obligation, and the Kaufman case was not an action for future profits, but for damages for expenditures already made. In reviewing those cases the Court in the majority opinion, page 326 of 37 N.W.2d, said:

"In cases cited by counsel for the plaintiff which involved contracts of sales agencies, which the court termed valid and enforcible, we do not find any support for the view that the contract at bar is valid because there is mutuality of obligation. In Hichhorn, Mack & Co. v. Bradley, 117 Iowa 130, 90 N.W. 592; Huntington v. Jacob Haish Co., 190 Iowa 1197, 181 N.W. 480, and Atlas Brewing Co. v. Hoffman, 217 Iowa 1217, 252 N.W. 133, no question was raised that the contract lacked mutuality of obligation.

"Counsel for plaintiff also referred to cases involving certain sales agency con-

tracts as in Rosenberger v. Marsh, 108 Iowa 47, 78 N.W. 837. The question of mutuality was not involved for the court found there was no agreement as the defendants claimed. Also, in Kaufman Bros. v. Farley Mfg. Co., supra, the contract was a contract of sale and not a contract of agency. As argued by defendants in their brief on resubmission, plaintiff referred to the value of the exclusive right to sell a certain brand of cigarettes, and being put to the expense of building up the trade. There was no claim for loss of future profits, but plaintiff merely sought damages for expenditures already made."

Judge Oliver, who wrote the dissenting opinion in the Lewis case, reviewed all of those cases in support of his dissenting opinion. The majority of the Court declined to follow those cases and hold that the contract involved in the Lewis case was not lacking in mutuality of obligation. As a matter of fact, the majority opinion follows and approves the holding of the 8th Circuit Court of Appeals in the cases of Du Pont de Nemours Co. v. Claiborne-Reno Co., 64 F.2d 224, 89 A.L.R. 238, and Terre Haute Brewing Co., Inc., v. Dugan, 8 Cir., 102 F.2d 425.

In the report of the Du Pont case in 89 A.L.R., on page 240, is set forth the authorities relied upon by Claiborne-Reno Co. One of those cases was Hichhorn v. Bradley, 117 Iowa 130, 90 N.W. 592. The outcome of the Du Pont case indicates that the 8th Circuit Court of Appeals did not consider the Hichhorn case as an authority against the contentions of the Du Pont Company that the contract involved was unenforceable because of uncertainty of consideration and lack of mutuality of obligation.

All of the cases cited by the plaintiff were among those assembled, considered or discussed in either the Claiborne-Reno case or the Lewis v. Minnesota Mutual Life Ins. Co. case, and found wanting.

It seems therefore abundantly clear that this court is bound by the two last above referred to holdings in the instant case and must therefore conclude that the contracts

and each of them pleaded in this case are void and unenforceable for want of mutuality, indefiniteness as to term, and insufficiency or lack of an adequate consideration upon which to sustain their lifetime character.

There is a natural hesitancy on the part of the court to dispose of an important controversy of this nature by sustaining a motion to dismiss, but in the light of the compelling authorities of this Circuit and the Iowa Supreme Court, from which extensive extracts have been had, this court is satisfied that the complaint in the instant case does not state a claim upon which relief may be granted.

The motion to dismiss will therefore be sustained and the following ordered entered:

This matter having come on for hearing before the court at Council Bluffs, Iowa, on the motion of the defendant to dismiss, and the same having been argued and submitted on briefs, and the court being advised;

It is Ordered that the motion of the defendant to dismiss the complaint herein be and the same is hereby sustained. Plaintiff excepts.