DeRoy PALMER and Donna Palmer, a
Partnership d/b/a The Backroom
Restaurant, Appellees,

v.

David ALBERT and James Yanney, a
Partnership d/b/a The Badgerow
Building, Appellants.

No. 64803.

Supreme Court of Iowa.

Sept. 23, 1981.

Lawrence D. Kudej of Shull, Marshall & Marks, Sioux City, for appellants.

George T. Qualley and Harry J. Watson of Qualley, Larson & Jones, Sioux City, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, ALLBEE and SCHULTZ, JJ.

LeGRAND, Justice.

This case involves an action by tenants against their landlords for breach of contract. A jury awarded plaintiffs $25,000; defendants appeal, and we affirm.

The defendants, David Albert and James Yanney, were partners in the ownership and management of The Badgerow Building in downtown Sioux City. The plaintiffs, DeRoy Palmer and Donna Palmer, were a husband and wife team which had been engaged as partners in the restaurant business for a number of years. The Bad-gerow Building is peculiarly shaped in what witnesses described as a reverse "L". The part designated as the tower is twelve stories in height. Extending to the west at the base of the building was a two-story extension, which is referred to in the record as the annex. Except for incidental use of the first floor of the tower, the plaintiffs operated a restaurant known as The Backroom Restaurant exclusively in the annex.

The plaintiffs first leased the annex from defendants in April of 1972. It was already equipped as a restaurant. It soon became apparent the restaurant was too small to operate profitably. The accommodations were enlarged, and on December 1, 1972, plaintiffs entered into a new lease with defendants for a term of five years with an option to renew for an additional five years. Rent was to be renegotiated after November 30, 1975.

The annex part of The Badgerow Building (but not the tower) had been marked for acquisition by the city of Sioux City (hereafter called City) as part of its urban renewal program, a fact known to the defendants but not to the plaintiffs when the 1972 leases were entered into.

In March of 1973 the City notified the parties of its intention to acquire the two-story annex for urban renewal purposes. Thereafter plaintiffs and defendants had several discussions concerning other possible locations in The Badgerow Building for The Backroom Restaurant. Nothing came of these meetings.

On June 5, 1973, defendants conveyed the annex to the City by warranty deed. Because the City was not then ready to go forward with the urban renewal, it leased the annex back to defendants on a month-to-month basis for $100 per month. This arrangement continued until June 13, 1976, and during that time plaintiffs continued to operate the restaurant on a month-to-month basis, paying the same rent as under the December 1, 1972, lease. The City ultimately took possession of the annex on July 12, 1976. The Backroom Restaurant was then forced to close its doors.

This litigation arises over the failure of defendants to provide plaintiffs with new restaurant space on the first floor of The Badgerow Building when the City took over the annex. The case revolves around a meeting on June 26, 1973, at which the following cancellation agreement was signed:

### LEASE CANCELLATION

This agreement entered into this 26th day of June, 1973, between David J. Albert & James Yanney, party of the first part and Mr. and Mrs. D. Palmer, d/b/a The Backroom Restaurant, party of the second part, by mutual agreement, (in consideration of $1.00 in hand paid) effective upon date of conveyance of title to the local Public Agency, declare the lease on property known as The Backroom Restaurant, Sioux City, Iowa, dated December 1, 1972, between the parties above mentioned null and void, and all other leases on the above real property that may be in existence between above parties shall become null and void.

The covenants herein shall extend to and be binding upon heirs, executors and administrators of the parties of this lease cancellation.

| DeRoy T. Palmer | James M. Yanney<br>David J. Albert |
|---|---|
| LESSEE | LESSOR |

Plaintiffs claim this cancellation was only part of the agreement reached at that time. They insist there were also oral terms forming part of that transaction under which defendants were to furnish other and comparable space on the first floor of The Badgerow Building for operation of The Backroom Restaurant.

The petition was in three counts. The first count alleged the parties entered into a "second" contract on June 26, 1973, partly written and partly oral. The written portion was the cancellation already referred to. The oral part consisted of a promise to provide other and comparable space on the first floor of The Badgerow Building for the restaurant when the City took possession of the annex. It is claimed this was to be on the same terms and conditions—except for location—as contained in the December 1, 1972, lease. The jury found for plaintiffs on this count and returned a verdict for $25,000.

The second count was based on fraud and misrepresentation. This was submitted to the jury and resulted in a verdict for defendants. The third count alleging negligence in the negotiations between the parties was dismissed by the trial court. The second and third counts are not involved in this appeal.

Defendants appeal from the judgment for $25,000 and appeal, too, from the jury's denial of their counterclaim for unpaid rent and utility charges in the amount of $1,028.41.

Both sides agree plaintiffs were operating a successful restaurant in the building. They wanted to stay; defendants wanted them to stay. When the City announced plans to take the annex, it became necessary for plaintiffs to look for new accommodations. They went, naturally enough, to defendants, who, they say, promised to find other space on the first floor of The Badgerow Building. Defendants say they promised only to *try* to provide a new location on the first floor of the building. Defendants assert they did try, albeit unsuccessfully. They insist they did everything they promised to do.

In order to succeed, plaintiffs had to prove a contract entered into on June 26, 1973, as alleged in the petition and as submitted to the jury. On appeal, the parties sometimes refer to the June 26th agreement as an oral modification of the 1972 lease and sometimes as a separate contract. We find neither pleading nor proof to support the modification theory. We therefore limit our inquiry to the issue of whether defendants breached a separate contract.

The principal defense relied on is the general rule that a contract which is vague, indefinite and uncertain cannot be enforced. The parties do not quarrel over this principle, only on its application to this case.

In *Davis v. Davis*, 261 Iowa 992, 1001, 156 N.W.2d 870, 876 (1968), we said:

A court cannot enforce a contract unless it can determine what it is. In order to be binding, an agreement must be definite and certain as to its terms to enable the court to give it an exact meaning.

A similar statement appears in 1 A. Corbin, Contracts § 95 at 394 (1963):

A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract; they must have expressed their intention in a manner that is capable of understanding. It is not even enough that they have actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness, and uncertainty as to any of the essential terms of an agreement have often been held to prevent the creation of an enforceable contract.

See 1 S. Williston, A Treatise on the Law of Contracts § 37 (3d ed. W. Jaeger 1957).

■ We have a number of cases supporting the principle that a contract must be definite and certain in order to be given legal effect. *Davis v. Davis*, 261 Iowa 992, 1001, 161 N.W.2d 870, 876 (1968); *Lewis v. Minnesota Mut. Life Ins. Co.*, 240 Iowa 1249, 1258, 37 N.W.2d 316, 321 (1949); *Gould v. Gunn*, 161 Iowa 155, 164, 140 N.W. 380, 384 (1913); *Faulkner v. Des Moines Drug Co.*, 117 Iowa 120, 122, 90 N.W. 585, 586 (1902). However, this rule should not be carried to extreme lengths nor should it be used to defeat the intent of the parties. J. Murray, Contracts § 27 (2d rev. ed. 1974); 17 Am.Jur.2d *Contracts* § 75 (1964). Vagueness, indefiniteness, and uncertainty are matters of degree. *Davis*, 261 Iowa at 1001, 156 N.W.2d at 876. Each case must be decided on its own particular circumstances.

In *Wickham & Burton Coal Co. v. Farmers Lumber Co.*, 189 Iowa 1183, 1185, 179 N.W. 417, 418 (1920), this appears: "[W]hatsoever is ascertainable with reasonable effort is sufficiently certain to be en-

forced . . ." In *Severson v. Elberson Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977), we said: "[Contract] terms are sufficiently definite if the court can determine with reasonable certainty the duty of each party and the conditions relative to performance." Restatement (Second) of Contracts § 32(2) (Tent. drafts Nos. 1–7) (1973) states the rule this way: "The terms of a contract are reasonably certain if they provide a basis for determining existence of a breach and for giving an appropriate remedy."

■ Courts are reluctant to hold a contract unenforceable for uncertainty and they bend every effort to avoid such a result. Williston, *supra*, at 110–11. Nevertheless courts cannot make a contract when there is none. *Gould v. Gunn*, 161 Iowa 155, 164, 140 N.W. 380, 384 (1913).

We turn now to the task of deciding if the evidence in the case now before us measures up to the minimum requirements of certainty necessary to reach a binding agreement.

The facts necessary to create the relationship of landlord and tenant were set out in *McCarter v. Uban*, 166 N.W.2d 910, 914 (Iowa 1969) as follows:

Generally, to create the relationship of landlord and tenant, it is only necessary to identify the parties, provide a definite description of the property, and include a statement of the term and the amount of rent agreed to be paid. This may be done orally or by writing, subject of course to the statute of frauds, which is not involved here.

Incidentally, there is no statute of frauds issue in the present case, either.

■ In deciding whether there is an enforceable contract, we consider not only the language used but also the surrounding circumstances and the conduct of the parties. *McCarter v. Uban*, 166 N.W.2d 910, 913 (Iowa 1969); *Decker v. Juzwik*, 255 Iowa 358, 368, 121 N.W.2d 652, 657 (1963). Contractual obligations may arise from implication as well as from express writing. *Fashion Fabrics of Iowa v. Retail Investors*, 266 N.W.2d 22, 27 (Iowa 1978).

Applying these principles to the case at hand, we conclude there was a jury question presented as to the existence of a contract. The parties certainly intended to reach *some* agreement. Plaintiffs were operating the restaurant successfully and wanted to stay. Defendants wanted to keep them as a tenant. When the cancellation was executed, there were several discussions concerning plaintiffs' future. The difference concerns only the extent of defendants' promise. Plaintiffs say they were promised a new first-floor location. Defendants contend the only commitment was that alternate space would be provided if possible.

The evidence discloses that the parties continued negotiations after the cancellation. It also shows plaintiffs stayed on under a month-to-month agreement while attempts to relocate the restaurant continued. Only one location was seriously considered—the drugstore space—although there was some discussion about the bank quarters, too. From the start, however, the parties zeroed in on the drugstore as the new home for The Backroom Restaurant. The alleged breach of contract and the resulting damages arose because the plaintiffs were forced out of business for eight months and later operated at a loss after reopening The Backroom Restaurant under a lease with Metz Bakery Company, which bought The Badgerow Building from defendants.

The testimony as to what was said at the June 1973 meeting falls far short of establishing an agreement. Defendants promised only "to take care" of plaintiffs and assured them they "should not worry." However, when the surrounding circumstances are added, including the related conduct of the parties, a far different picture is presented.

We start with the unlikely claim that plaintiffs cancelled the remaining portion of a valuable lease for the nominal payment of $1. Although at one time DeRoy testified plaintiffs received nothing else, it is apparent from all his testimony that he thought he had defendants' promise to locate the restaurant elsewhere on the first floor. The jury could have found this to be the real consideration for the cancellation.

■ There was enough evidence for the jury to find that the lease cancellation was vital to complete the sale of the annex to the city; that defendants, who had already conveyed the annex free and clear of all liens, needed the cancellation to make their warranty deed good; that DeRoy Palmer executed the cancellation for plaintiffs in reliance on the promise of alternate space for restaurant purposes; that this was to be the space then occupied by the drugstore; and that defendants failed to provide such space.

We conclude the trial court was right in submitting the case to the jury.

*Damages.*

Plaintiffs established their damages by the testimony of two expert witnesses, Lou Nordgren and William C. Schenk, Jr. Mr. Nordgren is a certified public accountant who was employed by plaintiffs during the entire time they operated The Backroom Restaurant. He was experienced in doing accounting work for restaurants. Schenk is also a certified public accountant.

■ They testified to plaintiffs' damages by the use of three different methods. They arrived at damages "somewhere between $79,000 and $110,000 for the years '77, '78, and '79." The trial court instructed the jury to allow plaintiffs "the amount, if any, the plaintiffs lost in profits from the operation of their business, as proven to you by a preponderance of the evidence, as a result of the acts of the defendants." In *Dopheide v. Schoeppner*, 163 N.W.2d 360, 367 (Iowa 1968), we approved a rule allowing damages for loss of profits in an action for breach of a lease. The present circumstances are within that principle.

Defendants offered no testimony on the question of damages. Hence the jury was left with only plaintiffs' evidence. The verdict was well within the limits both of them set.

Defendants do not object to the instruction. They complain rather that plaintiffs' evidence failed to meet the standards of *Watson v. Lewis*, 272 N.W.2d 459, 464 (Iowa 1978); *Dopheide v. Schoeppner*, 163 N.W.2d at 367; and *DeWaay v. Muhr*, 160 N.W.2d 454, 459 (Iowa 1968). These cases all set the general rule for damages resulting from breach of a lease. The damages must have been within the contemplation of the parties, they must have been proximately caused by the breach, and they must be ascertainable with reasonable certainty without resort to speculation and conjecture.

While the evidence in this case is subject to more than one interpretation, there was ample to allow the jury to decide if plaintiffs were damaged and in what amount. This is a classic case for application of the rule that damages should not be denied merely because the amount is difficult to ascertain so long as the fact that some damages were sustained is evident. *Basic Chemicals, Inc. v. Benson*, 251 N.W.2d 220, 233 (Iowa 1977).

*Payment by City.*

The City paid plaintiffs $10,000 as relocation expense and defendants argue this amount should be applied to reduce the judgment against them. This would be true if the $10,000 was to compensate plaintiffs for damages resulting from the breach of contract. However, the testimony concerning this payment is undisputed. It was paid for the cost of business relocation caused by the urban renewal program.

The instructions on damages limited recovery to plaintiffs' loss of profits. Thus there was no possibility of double recovery for the expense of relocating. The only authority defendants cite is *Ferris v. Anderson*, 255 N.W.2d 135 (Iowa 1977), dealing with offset for advance payments by an insurer to the injured party. That case does not support defendants' view. It is both factually and legally distinguishable.

*Defendants' Counterclaim.*

As already pointed out, plaintiffs stayed on after the written cancellation agreement of June 26, 1973. They were occupying the restaurant on a month-to-month tenancy at the same rental they paid before the cancellation.

They did not pay all the rent nor all the utility bills. This amounted to $1,028.41, for which defendants counterclaimed. The jury rejected their claim, and they ask us to reverse.

Although there is substantial evidence supporting the claim, it was not established as a matter of law. There was also evidence plaintiffs were entitled to occupy the premises rent free for approximately a month-and-a-half under defendants' lease-back agreement with the City. There was a jury question as to whether they received credit for this. The jury could have found the amount claimed was no more than plaintiffs were entitled to.

Finding no reversible error in any of the issues raised, we affirm the trial court.

AFFIRMED.