# IN THE COURT OF APPEALS OF IOWA

No. 18-0827
Filed February 20, 2019

**DAVID CHARLES ARCH,**
    Plaintiff-Appellant,

**vs.**

**JARED MICHAEL WHITE,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Johnson County, Kevin McKeever,

Judge.


    David Arch appeals the order granting Jared White's motion to enforce

settlement agreement.  **AFFIRMED.**


    L. Craig Nierman of Phelan, Tucker, Mullen, Walker, Tucker & Gelman,

L.L.P., Iowa City, for appellant.

    Patrick L. Woodward and Ryan F. Gerdes of McDonald, Woodward &

Carlson, P.C., Davenport, for appellee.


    Considered by Doyle, P.J., and Mullins and McDonald, JJ.

**DOYLE, Presiding Judge.**

David Arch appeals the district court's order granting Jared White's motion to enforce a settlement agreement. Upon our review, we conclude a valid and enforceable agreement was entered into by both parties and there was no material breach of the agreement. Accordingly, we affirm the court's order granting White's motion to enforce the settlement agreement.

## I. Background Facts and Proceedings.

For the purposes of this appeal, the facts are essentially undisputed. The case arises from a June 2, 2017 motor vehicle collision involving Arch and White. On August 15, 2017, Arch filed his lawsuit against White claiming damages resulting from the collision. Arch held off on service of the suit papers pending ongoing settlement negotiations with White's insurance carrier, State Farm Insurance Company (State Farm). After a settlement was reached, Arch's attorney, L. Craig Nierman, faxed a letter addressed to State Farm claims adjuster Stefanie Edwards, stating:

> My client has instructed me to accept your $3,000.00 offer. Please immediately forward to me your release (please incorporate any amounts paid for property damage on the amount listed on the release) and check payable to "Phelan Tucker Trust Account" . . . only. I am assuming that you will not be including any other parties on the settlement draft unless we agree otherwise. Regardless, I will not distribute the proceeds until the release has been properly executed and sent to you.

State Farm followed up by sending a release form to Nierman. No settlement draft was enclosed with the cover letter.[1] The release states:

---

[1] The cover letter is not a part of our record.

**For the Sole Consideration of**

Three thousand ($3,000) dollars *the receipt and sufficiency whereof is hereby acknowledged*, the undersigned hereby releases and forever discharges Jared White his heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or, who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about June 02, 2017, at or near [location omitted].

This release expressly reserves all rights of the parties released to pursue their legal remedies, if any, against the undersigned, their heirs, executors, agents and assigns.

Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

Undersigned hereby accepts draft or drafts as final payment of the consideration set forth above.  [Emphasis added].

After receiving the release, but not a settlement draft, Nierman emailed Edwards on October 9, 2017, asking: "Where are we at on the check?"  Edwards responded via email on October 10, 2017, stating: "Craig, please review the letter I sent on 9/15.  Once we receive the completed Release, we will issue the draft to you and your client."  Later that afternoon, a telephone conversation took place between Nierman and Edwards.  Nierman memorialized this conversation with an email, sent to Edwards later that day:

This confirms our conversation this afternoon in which I requested that you send the settlement check.  You refused.

I then directed your attention to the fact that your release recites that my client has received the settlement proceeds. Knowing this, you continued to refuse to issue the settlement check until you received the signed release.

You also refused to transfer me to supervisory personnel upon my request.

You continued to insist that I send you a signed release with inaccurate information, i.e., that my client had received the settlement proceeds, even after I indicated that my only alternative was to add a breach of settlement count to the litigation. You then continued to refuse to mail the proceeds.

Both parties dug in their heels and refused to budge from their respective positions. With the settlement issue at a standoff, Arch proceeded with his lawsuit and served White with the suit papers on October 17, 2017. White filed an answer. On November 15, 2017, White filed a motion to enforce the settlement agreement, asking the district court to enter an order compelling Arch to comply with the terms of the settlement and dismiss Arch's claims against him. White resisted, and the matter was set for hearing.

On February 28, 2018, the district court entered its order granting White's motion. The court noted that the parties did not dispute the existence of the $3000 settlement agreement. The court found that the dispute before it arose out of State Farm's refusal to provide the agreed upon settlement funds to Arch absent Arch signing a release. The court set forth each party's position:

> [Arch] claims that the release contained language that was inaccurate and to sign the release would have been tantamount to committing a fraud. [Arch] now claims that [White] materially breached the settlement agreement and that should excuse him from performance under the agreement. Furthermore, he argues that he should now have the right to pursue his claim as if the agreement had never been made.
> [White] asks that the Court enforce the settlement agreement previously reached. [White] argues that he never refused to carry

out any of the essential terms of the agreement. Specifically, [White] indicates that he was willing to provide the $3,000.00 to [Arch] but a dispute arose regarding this exchange of funds occurring before or after the release was to be signed by [Arch].

Finding no fraud, misrepresentation, or concealment, the court concluded the settlement agreement should be enforced. The court ordered: (1) White "shall deliver the funds to [Arch] within 10 days of the date of this order" and (2) Arch "shall execute a release immediately upon receipt of the funds in question." Arch filed a motion to enlarge or amend. White resisted. The district court denied the motion on May 1, 2018. Arch appealed.

## II. Standard of Review.

It is generally recognized that district courts have the authority to enforce settlement agreements made in pending cases. *See Wright v. Scott*, 410 N.W.2d 247, 250 (Iowa 1987); *Wende v. Orv Rocker Ford Lincoln Mercury, Inc.*, 530 N.W.2d 92, 94 (Iowa Ct. App. 1995). If the material facts are not in dispute, the court may summarily enforce the agreement on motion by one of the parties. *Wende*, 530 N.W.2d at 94. However, if the material facts are in dispute, the issue must be resolved by the finder of fact. *Id.* On appeal, a trial court's enforcement of a settlement agreement is typically reviewed for correction of errors at law. *Estate of Cox v. Dunakey & Klatt, P.C.*, 893 N.W.2d 295, 302 (Iowa 2017).

## III. Discussion.

There is no dispute between the parties as to the existence and essential terms of the settlement agreement. State Farm agreed to pay Arch $3000 in exchange for Arch releasing all claims against White. The current dispute arises

out of the parties' inability to agree on how to carry out the settlement agreement. Arch asserts

> despite [State Farm's] actual knowledge that it was demanding that Arch sign a receipt for funds he never received, it refused to issue the check until Arch made a false written statement in connection with an insurance claim. In other words, [State Farm] conditioned the payment of settlement funds on Arch delivering a written statement it knew was false. Because Arch would not make a dishonest statement—particularly in conjunction with making an insurance claim—he exercised his option to seek a jury trial for his damages.

White acknowledges:

> Arch's issue with the settlement is the inclusion of language in the proposed release indicating that the settlement draft had been received, along with the claims adjusters' refusal to send the settlement draft prior to Arch signing the release.

"The law favors settlement of controversies." *Wright v. Scott*, 410 N.W.2d 247, 249 (Iowa 1987). The Supreme Court has routinely held that settlement agreements are "essentially contractual in nature" and contract principles are used when interpreting settlement agreements. *Phipps v. Winneshiek Cty.*, 593 N.W.2d 143, 146 (Iowa 1999); *Wright*, 410 N.W.2d at 249. Therefore, settlement agreements, like contracts, are enforced absent fraud, misrepresentation, or concealment. *Id.* The district court found, and we agree, that there are no facts supporting a finding of fraud, misrepresentation, or concealment.

However, a settlement agreement, like any binding agreement, "must be definite and certain in order to be given legal effect." *Palmer v. Albert*, 310 N.W.2d 169, 172 (Iowa 1981). Yet, "this rule should not be carried to extreme lengths nor should it be used to defeat the intent of the parties." *Id.* A party may rescind a contract where the other party has performed a material breach—a breach that "is

so substantial as to defeat the object of the contracting parties." *Beckman v. Carson*, 372 N.W.2d 203, 208 (Iowa 1985). However, rescission is "not permitted for a slight, casual, or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Maytag Co. v. Alward*, 112 N.W.2d 654, 660 (Iowa 1962). Furthermore, it is well-settled contract law that a party cannot seek rescission when they are in default of performance. *See Atlas Brewing Co. v. Huffman*, 252 N.W. 133, 137 (Iowa 1934).

Arch argues the release language contained a falsehood—an acknowledgment that he received the settlement funds. He claims State Farm was, whether intentionally or unintentionally, setting him up to commit insurance fraud, a felony, by conditioning payment on signing of the release.[2] Arch argues that the release added a new condition to the agreement and White materially breached the agreement, through State Farm, allowing Arch to be excused from performance under the agreement and pursue his claim as if the agreement had never been made. White asks that the agreement be enforced as he was always willing to pay the $3000 to Arch, as long as Arch released his claim.

In its ruling denying Arch's motion to enlarge or amend findings or conclusions, the district court found and concluded:

> Though [Arch] contends that it is disputed whether [White] breached the Settlement Agreement by adding a new condition to the Agreement, the Court disagrees that this is a material fact in dispute.

---

[2] Arch also notes, "using mail, email, or fax to transmit the release—containing a statement that Arch knew was false—could have put him in jeopardy of committing mail or wire fraud." (citations omitted). Also that, "These same arguments could also be made against an attorney who assists a client to submit a false document. This would have a chilling effect on individuals receiving the zealous representation that they need."

> [White] has indicated that it has been and is willing to pay the $3,000 to [Arch] in settlement of [Arch]'s claims, if [Arch] releases his claim. [Arch] does not appear to dispute the contention that [White] is willing to pay the $3,000. Yet, [Arch] asserts that the issue is whether the $3,000 had to be paid prior to the release of his claim. The Court finds that [White]'s request to receive the release prior to turning over the $3,000 was not a new condition to the Agreement, and the Court finds that this was not a material fact in dispute *surrounding* the agreement. The Court finds that the material facts surrounding the agreement are not in dispute – i.e., that [White] would pay $3,000 to [Arch] to settle this claim and that [Arch] would sign a release. [Emphasis in original].

We agree.

The parties had a number of different options available to them in resolving this dispute without the court's intervention, but they failed to pursue any of them. State Farm could very well have sent Arch's attorney the settlement draft and the release with instructions that the draft not be negotiated until Arch signed the release and returned it to State Farm. Arch's refusal to execute the release prior to receipt of the settlement draft is understandable. Nevertheless, we conclude, like the district court, there is no valid reason to undo the settlement agreement reached by the parties in 2017. "[V]oluntary settlements of legal disputes should be encouraged, with the terms of settlements not inordinately scrutinized." *Wright*, 410 N.W.2d at 249. We commend the district court in applying a healthy dose of common sense to the situation. Accordingly, we affirm the district court's order granting the White's motion to enforce the settlement agreement.

**AFFIRMED.**